UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

FILED

OCT 15 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
            DEPUTY CLERK

RUSSELL SCOTT ADAMS

    Plaintiff,

v.

JESSE BALDWIN, PRMC SUPERINTENDANT,
UNKNOWN HOSPITAL BOARD MEMBER #1,
UNKNOWN HOSPITAL BOARD MEMBER #2,
UNKNOWN HOSPITAL BOARD MEMBER #3,
UNKNOWN HOSPITAL BOARD MEMBER #4,
REX EMERSON, SUSAN HARRIS, SCOTT MONROE,
BUSTER BALDWIN, ALLISON BAKER,
JESSE BALDWIN, KRIS KELLER, EVIN ANDERSON,
AUSTIN BEAL, JESSICA ADAMS,
ELIZABETH SMITH, HEATHER STABBINS,
JACKLINE DOWDY, ANITA VAN KLAVEREN,
NUVIA CRUCES, SHELLEY PARKER, ANA KELLER,
J. GONZALEZ, HOLLIE MOUSER, TERRY RANEY,
BRIAN DUBY, DIANE RODRIGUEZ,
ROLANDO VALVERDE, JANICE SMITH,
NATASHA VALDEZ, RHIANA SOLIS,
REBECCA BOLIN, KERRVILLE POLICE CHIEF,
KERR COUNTY COMMISSIONER,
NURSE SHANE, UNKNOWN PRMC NURSE #1,
UNKNOWN PRMC STAFF #1,
UNKNOWN PRMC STAFF #2,
UNKNOWN PRMC STAFF #3,
UNKNOWN PRMC STAFF #4,
UNKNOWN PRMC STAFF #5,
PETERSON REGIONAL MEDICAL CENTER,
KERRVILLE POLICE DEPARTMENT,
KERR COUNTY, KERR COUNTY HOSPITAL DISTRICT,
BRETT FERGUSON, WESTON EISMANN,

in their official, individual, corporate,
and municipal capacities,

    Defendants.

CIVIL ACTION NO.

# SA24CA1190 OG

Judge

## U.S.C. §1983 COMPLAINT

### SUMMARY

1. June 11, 2016, Peterson Regional Medical Center (herein PRMC) had the plaintiff arrested because he placed videos (of staff attempting to seize him and using intimidation tactics to accomplish their goal) online to bring awareness. The attempted seizure was part of a fraud scheme that was done to prolong his stay at the hospital to bill

the Federal and State governments through their medicare and medicaid programs for services under the fraudulent declaration of required emergency services. The video was posted the previous year but the hospital district had ordered the hospital employees to arrest the plaintiff if he returns to the Emergency room.  After the June 11th seizure Officer Jesse Baldwin (herein Jesse) used excessive force and the Kerrville police department and Kerr County Court at law attempted to conceal the actions of the former commissioner's son(Jesse) by denying the plaintiff's due process and filing two  judgments of conviction, fees, fines, court costs, and attorney fees without any trial or even an arraignment. The Kerr County Attorney intentionally withheld dismissal for 6 years to prevent this litigation and suit.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§1983, 1988,and the First, Fourth, Fourteenth amendments of the Constitution of the United States.

3. This court has subject matter jurisdiction of the action under 28 U.S.C. §121,and 1343.

## PLRA INAPPLICABILITY

4. Since the plaintiff is incarcerated but the claims are for incidents prior to and not involving his incarceration or the conditions of confinement certain PLRA requirements may apply and certain requirements do not apply suchas limitations on attorney fees which is governed by 42 U.S.C. § 1988(b) and payment of filing fees.

## STATUTE OF LIMITATIONS TOLLING

5. CK16-0666 and CR16-0667 were dismissed on December 13, 2022 and this counts as a favorable termination under Thompson v. Clark. However, The plaintiff believed he was still Heck barred from this suit because Jackline Dowdy (here in JD) and Weston Eismann worked in concertt to intentionally and maliciously withhold notice of the dismissals until the middle of July of 2023. This was done to disrupt and prevent the plaintiff from filing the instant §1983 complaint. This witholding by the Kerr County Clerk(JD) and his public defender cut valuable research time for the pro se

2

plaintiff (with no legal experiance) by more than 7 months. This is a complex case involving many defendants and some unknown defendants. Texas law prevents extensions to serve unknown defendants unless due diligence is used prior to the statute of limitations expiring. In order to fairly seek remedy the plaintiff requests this court grant him the complete statute of limitation allotment and allow seven months of tolling until July 14th 2025, so that he can complete discovery against the known defendants to aquire the unknown defendants names and addresses, to serve them within the required windo.

PARTIES

PLAINTIFF

6. The plaintiff, Russell Scott Adams, founder of Stationia.com and youtube.com/Stationia placed videos at youtube which were always intended to be linked with a news story on the Stationia.com website. The videos were of public importance and involved the Kerrville Police Department, the Kerr County Sheriff's department, and PRMC violating constitutional rights and police and public policy. Stories on Stationia included that the Kerr County Sheriff at the time Rusty Heirholtzer blurred the racial lines of Kerrville declaring incorrectly on Federal applications that the Kerr County Sheriff's Department had only pulled over a literal few african americans in order to bypass some of the requirements of Federal funding. One of the requirements of federal law was that if there are a certain number of african americans stops and arrests by the department then that department must have 24 hour video surveillance running in all of its arresting vehicles.; Another story was that Kerrville had been oppressing its lower income communities, largely consisting of minorities, by actively preventing public transportation. Kerrville would not create or maintain a city bus line; Another story written and ran by the plaintiff and hosted at Stationia was written to promote labor pickup locations which was a practice that had been bullied out of existance by the Kerrville police department and sherrif's department with constant harrasment to people intent on finding work. They used the exceptions of a few bad apples to oppress an entire class of desparate people looking for day labor.;

Another story was about how the Kerrville law ewnforcement community hunted and gunned down Michael Lynch who was not a threat and was on deferred adjudication probation. The story revolved around the other actions that could have been taken instead of hunting him down and killing him for driving through town.

7. The plaintiff is incarcerated at Alfred D. Hughes Unit in Gatesville Texas after being revoked of deferred adjudication in part for the illegal seizures herein. Prior to revocation September 26, 2016 he had never been convicted of a crime but had had two different dismissals which were falsely charged as retalliation by local law enforcement for running his news stories. He was not part of any party  and began writing news stories because of his own experiances with the crooked law enforcement community and court system in Kerrville, trying to make a difference.

## DEFENDANTS

8. The following defendants at all times acted under color of law.

9. Kerr County is sued as a person and municipality. It is believed that all of the defendants lived and worked within Kerr County.

10. Peterson Regional Medical Center(herein PRMC) is a corporation and is being sued as a peron and a corporation.

11. The Kerrville Police Department is being sued as a municipality and a person.

12. Judge Rex Emerson of the 198th District Court was Judge at all times.

13. Judge Susan Harris of the Kerr County Court at Law was Judge at all times.

14. Buster baldwin was Kerr County commissioner until 2015, he is sued as a person acting under the color of law at the behest of *Jesse* baldwin, his son, for his benefit. He used other state actors including Jackline Lowdy, to protect his sons reputation.

15. Jesse Baldwin, Kris Keller, J. Gozalez, Austin Beal, each were employed at the Kerrville Police Department at all times.

16. Allison Baker was the Records Supervisor of the criminal records division at all times.

17. Heather Stebbins was the Kerr County Attorney at all times.

18. Anita Van Klaveren, Nuvia Cruces, Shelley Parker, Ana keller, Hollie Mouser, Terry Raney, Brian Duby, Diane Rodriguez, Rolando Valverde, Janice Smith, Natasha Valdez, Rhiana Solis were each clerks working as deputy clerks at the kerr County Court at law at all times.

19. PRMC Superintendant, Unknown Hospital Board member #1-#4, Unknown PRMC Staff #1-#5, Unknown PRMC Nurse #1, Nurse Shane, Jessica Adams, and Elizabeth Smith were employed by PRMC at all times.

20. Brett Ferguson represented the plaintiff as his original counsel on cases CR16-0666 and CR16-0667 at the Kerr County Court at law. He represented the plaintiff from 2016 until his conflicts of interests were exposed. At which point he withdrew, reluctantly. He was under color of law and worked in concert with Buster Baldwin, Jackline Dowdy at all times within Kerr County.

21. Weston Eismann was the plaintiff's final public defender for CR16-0666 and CR16-0667 in the Kerr County Court at law. He was under the color of law working in concert with jackline Dowdy and Buster Baldwin.

22. Jackline Dowdy was a legal assistant in the Kerr County Prosecutor's office until 2017 working with heather Stebbing. Later She became the Kerr County Clerk in 2018. She replaced Rebecca Bolin.

23. Rebecca Bolin was the Kerr County Clerk until Jackline Dowdy took the office.

24. Nurse Shane and the Unknown Staff #1 - #5 are the individuals dressed in hospital uniforms and scrubs in the videos produced by Kris Keller and Jesse Baldwin and also in the sureillance videos of the Emergency Room lobby that was taken on june 11 and supoenaed. This video was obtained from Barbara Stehling of the Quality control at PRMC. The true identities must be obtained in discovery.

25. The Kerrville Police Chief was at all times the police chief of the Kerrville Police The Kerr County Commisioner in 2016 and 2017 was at all times acting Kerr County Commisioner.

26. Evin Anderson was an off duty border patrol agent at all times no relationships are known about him because despite his use of force in the video he failed to provide a statement.

27. Scott Monroe was at all times the District Attorney for the 198th District Court.

28. The Kerr County hospital District is the hospital district of the Peterson Regional Memorial Medical Center.

## JURY TRIAL

The plaintiff requests a jury trial.

## ADMINISTRATIVE REMEDY

The plaintiff did not exhaust administrative remedy inside of the prison because all of the events giving rise to the claim are for things that happened before and outside of the context of the prison and were not attacking the conditions of his confinement.

## TERMS

"including conspiracies jointly" includes one or more conspiracies between any number of defendants up to and including all of the defendants in the group specified. A conspiracy invloving a defendant does not preclude his or her participation in another conspiracy.

FACTS

29.    ‑The claims arise at Peterson Memorial Hospital between 5:00 pm and 8:00 pm
       on June 11th 2016. Jesse Baldwin (herin Jesse) illegally seized the plaintiff.
       for posting videos on Youtube.com/Station1a, near the entrance to the emergency
       room lobby. Afterward, he used excessive force injuring the plaintiff. Then,
       he violated the plaintiff's constitutional rights further through a series of
       events including fabricating police reports and probable cause affidavits, intentionally
       excluding exculpable statements, conpiracy, destroying video on the plaintiff's
       cell phone, malicious prosecution, illegal convictions without trial (which
       were entered by a legal assiistant for the prosecutor) and more.

30.    ‑There is a myriad of defendants: The father of Jesse, Buster Baldwin (herein
       Buster) had the incentive and connection to covince Jackline "JD" Dowdy (herein
       JD), to use her position and computer access to file plea bargains, unseen by
       the plaintiff, as if they had already been ruled upon by a judge, carrying conviction,
       sentence, fees, and fines. The Kerr County Hospital Board which instituted a
       seek and destroy policy resulting in arrest and destruction of the plaintiff's is
       video; and more.

31.    ‑ All of the claims within would have proved the plaintiff was innocent of CR16-
       0666 and CR16-0667 at the Kerr County Court at law. But, on December 13, 2022
       his claims began to accrue when the county attorney Heater Stebbins dismissed
       both charges.

32.    ‑ Plaintiff was arrested on June 11, 2016 and was taken to Ker County jail where
       he bonded out on the 12th. On 6/21/2016, he was arrested by surrender for probation
       violations related to these charges and his bond was revoked until 7/21/2016,
       when he was released and returned to bond for each charge and PR bond for the
       violations. On 7/19/2016 a complaint and information were filed beginning process
       for each misdemeanor charge. The District Attorney of the 198th Scott Monroe
       amended his motion to proceed to include technical violations of failure to
       pay around $1000,00 in fees. On 9/26/2016 a motion to revoke hearing was held
       based on the amended motion to proceed.

33.   Findings of true were found by Judge Emerson for failure to pay $18.00 for a
      urinalysis; failure to pay $30.00 per month for July, August, November, December,
      of 2014; January through December of 2015; and then $60.00 per month for february,
      march, April, may, and June of 2016; and offenses against the State of Texas
      for resisting arrest, ? interfere with a police officers duties, Assault on
      a Police officer, and facilitating an Escape; in B1475 and B1476. On 9/27/2016.
      bond was taken away and the plaintiff remains incarcerated for the sentences
      for the felonies because of the totality of the violations.

34.   Therefore, when this court finds all claims beyond a preponderence of the evidence
      the probation judgement in B1475 and B1476 will not be called into question,
      as a matter of law.

35.   Many false entries were entered into the records of CR16-0666 and CR16-0667. These
      were put into the case registers and summaries and propagated to the low enforcement
      authorities and the news papers. Botht of these records are the official electronic
      filing systems for the cases and were public.  Once these records were entered
      falsely , the court and its personel in concert, intentionally and maliciously
      acted as if the entries were real in fact and were supported by live, real and
      actual evenbts. Even though, in reality, there was no legal, factual, or even
      a good faith reason for the records to exist. Arraignment was also entered for
      both as if it had happened on 10/02/2016. This did not happen and was not waived.
      As proof in 2019 as Kerr County Clerk JD attempted to get a waiver of arraignment
      from the plaintiff for both causes. he declined and instead saved her three
      year late requests.

### UNDER THE TABLE CONVICTIONS

36.   Jesse made an illegal arrest and excessive force and met with Buster, his dad.
      Buster had been the Kerr County Commissioner for years and because of that he
      acctually had real influence to help with officials.Jesse need his father
      to use his connections to prevent publicity and make his malevolent actions
      dissapear.

Buster could help Jesse out of almost any situation that would affect his future career in Kerrville. Jesse wanted to be the king of the county eventually just like Buster. Jesse's family is all through law enforcement and the judicial branch. They are lawyers, jailers, public employees. Buster was known for actively participating in political campaigns because of his notoriety. One such campaign was in 2019 as he promoted Eli Garcia while still calling himself the commissioner in a Kerrville Daily Times article.

37.    Jesse explained to Buster that when the surveillance video comes out that it will show him comming from behind and using force against the plaintiff trying to topple him in a running pit manuever and that he did not declare he was police. It would also show him linebackering an unarmed, non-threatening, non-fleeing, surendered plaintiff through the metal and glass double doors at the ER entrance while his hands were raised after he had obeyed his order to stop. Jesse asked Buster for help to make the problem go away quietly by helping to conceal averything not in his reports made up narrative. Buster looked up the plaintiff and told Jesse not to worry because he could use his influence to push the motion to revoke (herein MTR) back after hours so it will go publicly unoticed and once the plaintiff is on the hook for his felonies then he'll plead guilty to the two misdemeanors which would run concurrent. he assured Jesse that the cases would have convictions without a public trial no matter what.

38.    Buster was true to this objective and the MTR was pushed back until the very last hearing after hours even though it was scheduled to be held at 1:30 pm. It happened with the buildings lights out (except for the courtroom) with the sun setting on the outside and the court room was empty (except for court personel and the witnesses and parties). Buster's influence had no affect on the effect of the MTR or sentencing hearing, or judgement of B1475 and B1476 in the 198th. But, he had considerable control over the convictions, sentences, fines, fees, and other costs in CR16-0666 and CR16-0667 in the Kerr County Court at law. he would ultimately contact and convince JD that she should go to a computer and enter in credentials then interface the records and enter in a plea bargain

conviction, sentence fees and fines and all of the information it entails as if
it had been entered, ordered and adjudged by Judge harris, the presiding Judge.
She did this on 12/15/2016 as ordered by Buster.

39.    Entering orders and judgemnets is not a duty of a legal assistant to the prosecutor
as set out by Texas law. it is the role of a court clerk. On the 19th ofDecember
JD would step outside of her role as a prosecutorial legal assistant once more
because in. her nervous haste on the 15th she forgot to sentence the fines and
everything had to look officialor the plaintiff would get a public trial. Discovery
will reveal JD was the user that entered the convictions either through her
own account or access that was given to her by another.

The transaction list from CR16-0667 is attached.

40.    Buster had contacted jD because Brett Ferguson (herein Ferguson) had informed
him that the plaintiff would not take a plea for any amount or under any circumstances
and had insisted on a very public trial. Ferguson was appointed as counsel to
the plaintiff. All  these conversations happened either by phone, in person,
or by text or email after the plaintiff denied a plea in Kerr County jail when
Ferguson did an attorney visit there to make the offer.

41.    Buster had a running relationship with Ferguson and he had an employment interest,
financial interest with Buster. Because, in term, the Texas Code of Criminal
procedure 1.054 gives the Commisioner's Court control over paying indigent counsel.
The court        the previous year was overseen by Buster.  When Ferguson
contacted Buster; she explained how the plaintiff had told him that he would
win at trial based on  the surveillance video which contradicts all of  Jesse's
reports. Buster told Ferguson he would call him later and then called JD to
tell her to file and conceal the two convictions.

41.    Buster knew JD and convinced her that he had considerable influence over the
next Kerr County Clerk election and could help her to get elected to the Kerr
County Clerk position. She would first have to prove her loyalty to him by
using her internal position and the policy of Kerr County that allows a prosecutor

13

legal assistant to enter a final judgemnt. Buster told her that she must make
sure notice is not given to the plaintiff.and that all of the clerks and Ferguson
must conceal her as the filer because every other defendant would have a right
to trial and notice. The following year JD was elected as Kerr County Clerk
because of Buster's influence..Discovery will be necessary to discover how this
happened and Buster's role. Which, could have been a campaign donor or campaign
helper overtly or covertly. Or, it could even be more sinister in line with
election fraud.

42.  The judgement of conviction was so convincingly entered that it passed Judge
Harris's scrutiny before she charged the plaintiff with attorney fees for Ferguson's
apppointment. This order was dependant upon an actual conviction and is important
to this suit because it is proof that the conviction entered was real. Post-conviction
fees such as attorney fees are covered under the Texas Code.of Criminal Procedure
ch. 102.11 and the term "cost" is covered by the Texas Rules of Civil Procedure
145(c). Texas law also makes it the duty of the Judge to inspect a judgement
entered by a clerk.

43.  The plaintiff did not treieve notice of the judgement of conviction, a sentencing
order, or notice of the subsequent judgement of attorneys fees made by Judge
Harris on 1/3/2017,from Rebecca Bolin or any other defendant clerk or deputy
clerk on her behalf. This is because JD told Terry Raney in person that the
plaintiff will appeal, file for new trial, file an 11.07 or a 2254 if he finds
out about the illegal conviction. And that she will look out for Terry and the
other Clerks and Deputy clerk defendants when she is the Kerr County Clerk if
they protect her as the filer of the convictions and conceal all notice to the
plaintiff in order to prevent him attacking the conviction. Terry Raney agreed
and followed.  Rebecca Bolin told Terry later that she agreed to stay out of
the way because Buster had taken care of her. But, even by her abstention she
denied proper service and notice to the plaintiff.

44. Every clerk and deputy clerk defendant met with Terry Raney in person and agreed to keep evidence of the conviction and sentence out of the defendants hands. Over the next 8 years they were true to this agreement. Even upon direct requests for the filer and for information about how the convictions happened from the plaintiff in his letters. One after another. They would go completly unanswered.

45. The public nature of the convictions sentences, fees, and fines charged had only been told to the plaintiff as information which would be entered if the plea were taken and is not binding unless the plea were taken. But, by the time the plaintiff saw the plea on the 21st of December 2016 it had already been entered by JD.

46. Before 2017 the plaintiff had no idea that the world presumed that he was guilty of the charges. Each clerk and deputy clerk defendant hadn't sent notice. And, in not doing so they prevented all remedy and over turning as the disposition still showed conviction. Their constructive denial of remedy was the proximate cause of the record remaining a public conviction. So, they falsely informed his family and friends that he had commited the now dismissed offenses and that he pled guilty in a judicial confession. The window for new trial had closed and so had the appeal window. The limita ton on his 2254 had almost run out preventing any vialble time to get his case and client file, research, and then file his 11.07 to exhaust state remedies. Essentially, his post-conviction remedy had been reduced to only a year late 11.07 habeas by that time. There is no doubt an 11.07 would revers an illegal conviction, but the plaintiff would have had to prove that he were confined and since they had given him time served, and not time to be served, he wasn't technically illegally confined, at the time.

47. Two deputy clerks did even more than manipulate records to prevent 11.07 by concealing notice from him and not explaining why he was charged fines, fees, and post-conviction costs in light of the obvious word "convicted" showing like a neon light in the online records. Brian Duby and Terry Raney also sent fictitious review hearing notices to plaintiff's TDCJ facility. Brians was dated 3/28/2017

and Terry's was dated 7/25/2017. Both of these; much like the fictitious "Araignment" entry existed on the records for years. Unlike the arraignment record in 2019, the fictitious review hearings vanished without a trace. This is due to many letters filed by the plaintiff and his special plea of double jeopardy bringing light to the records he had eventually found. The purpose of the fictitions hearings was t placate th'e plaintiff into believing no convictions had been entere d and that he was awaiting his day in court like any other person would be waiting had their constitutional rights not been stripped away by an ex-commissioner.

48.   The plaintiff filed a special plea of former jeopardy because it was apparent from the record that a conviction had happened in each case and that further prosecution was imminent because review hearings were happening and other pretrial common occurances. His special plea detailed that fines, fees, and jail time along with court costs had been charged against him. In CR16-0666 $287.00 was charged on 12/15/2016, and $910.00 in attorney fees 1/3/2017. For CR16-0667 $287.00 was charged 12/15/2016 , and $500.00 in fines was added 12/19/2016. Each judgment entered required 116 days of jail time and gave credit for 116 days of jail time. These numbers are identical to the numbers on the pleas sent to the plaintiff by Ferguson on the 21st of December 2016.

49.   All adding of fictitious records and all record changes to CR16-0666 and CR16-0667 that were material and where notice was not sent have an advers inference related to the purpose of the records because many material changes happened related to unallowed and missed proceedings which appeared and would later vanish without a bench warrant or attorny contact. Both of which were requested by the plaintffff in letters before the hearings were scheduled to take place.

50.   These hearings appeared while there was a public conviction apparent from the records as the deposition of the cases. When a case is referenced or accessed by a clerk or deputy clerk on the information system it shows the disposition of the case next to the case number and cannot be missed unless that part of the monitor iscovered or the users eyes are closed. While seeing"convicted" Brian Duby and

Terry Raney sent the "Review Hearing" notices and said nothing of the dispostion.

51. While seeing "convicted" JD entered the fines and forwarded the plea to Ferguson. And, Ferguson saw "convicted" as he accessed the cases before he forwarded the plea on the 21st to the plaintiff.

52. Every clerk and deputy clerk who accessed the cases on the information system would see the fines, fees, fees, court costs and attorney fees and would know or should know that this must be a conviction even after the word "convicted" was removed without notice for each case. Each transaction list is unique to the case in the information system. Therefore, all charges charged in the case were for that case. The charge amounts in these cases are out of the ordinary for a case that has no conviction. The fees are much greated than standard filing fees. This difference would be obvious for a clerk or deputy clerk.dealing with these records day in and day out. These post-conviction costs being added into a clerk, would be as ovious as a farmer looking at a cob of corn and percieving that it either has corn on it or it does not.

53. As of this claim, because the time served and all of the transaction assessments are still apparent in the record the conviction still exists in the minds of the public despite the word "convicted" being removed or the dismissal as a matter of law. The liberty risk involved is a Fourteenth amendment violation. There is also a property risk and a separate liberty risk for the time served, the fines, the court fees, and attorney costs.

54. All of the communications between the parties can be inferred by the completed objectives. They will also be proved through depositions of witnesses and defendants who wish to contact the plaintiff or crossclaim against other defendants. Interogatories will also reveal more about the communication. Record entry timestamps will reveal vurtherance, adhesion, knowledge of all of the orders not saved. Email on the information system and corporate system.will reveal more details about communications through email between JD, Buster, and each defendant including

but not limited to Terry Raney.

55.    Judge Harris had a policy that allowed the prosecutors office the ability to input final orders, judgements, and pleas into their adversary's records that were fictitious and had the appearance of an order judgment or plea entered by a clerk or deputy clerk in to the information system. Judge Harris had a duty to review orders and knew this duty exists becase mistakes happen and bad faith entries happen. She did not verify the judgment well enough before post-conviction costs were added in her 1/3/2016 order. She was purposeful, deliberately indifferent, and malicious in not checking the conviction.

56.    The Kerr County Commisions had a policy that allowed the prosecution the ability to input orders, judgements and pleas into their adversary's records that were fictitious and have the appearance of an order, judgement, or plea entered by a clerk into the information system. . Buster used this policy intentionally to publicly convict the plaintiff. Also, therefore, the acting Kerr County Commisioner knew and was deliberately indifferent to its effects in the hands of a mere legal assistant and still allowed the non qualified staff at the Kerr County Courthouse to enter the foregoing instruments in to the information system.

57.    Discovery will need to be done to gain more insite in to the plicies mentioned. The policy is widespread. The implications are many are convicted without knowledge without notice, and without opportunity to review their opponents illegal entries into the system.

58.    Judge Harris accessed the plaintiff's case on the information system and was deliberately indifferent, intentional and malicious to the conviction entered(with the sentence, fines fees and court costs).which she did not order. Even though this was in her own court where she was the only judge presiding. She had personal legal knowledge of all of the orders entered as a matter of law. She was deliberately indifferent to the implications by not investigating or supervising and failing

to train the eleven clerks and the prosecutors office employees. She should
have trained them each to percieve the obvious, and on percieving the obvious
conviction, fix the errors and notify the plaintiff of all the material changes
which resulted from the change. Instead, she malicioul.sly, and intentionally
ignored the poblem and failed to train and supervse each subordinate officer(including
deputy clerks and legal assistants). In doing so she denied her legal duty and
supported the conviction and injuries ordering post-conviction attorney fees
against the plaintiff.without verifying, in any way, the paper trail.

59.   The Clerk and Deputy clerk defendants di not send notice of the attorney fees
      order intentionally and maliciously( or alternatively negligently) continuning
      the concealment and furthering the conspiracy.

60.   The only reason the word "conviction" was removed is becaise the plaintiff first
      found out about the convictions by obtaining records in constructive absence
      of Ferguson as counsel over his case. The plaintiff had relentlesly sent letters
      to the clerks office asking for answers which never came and he motioned for
      substitute counsel.The convictions were not removed at the same time
      like would happen if a person discovers a mistake on two records in a clerical
      error. Instead one was taken off inferring knowledge but the other remained
      for many months until it was quietly removed. There is a TRN of TRN#921715891,
      A001 and A002. All of the TRN records will need to be accessed and obtained
      in discovery because they are not available and Kerr County Court at Law has
      continually denied requests for public records due to indigence and the inmate
      exception in Texas law that makes reviewing requests for public records, if
      made by an inmate, discretionary. This will need to be done to learn the details
      and timing of adding and removing and notification of the Kerrville Police
      Department and the Kerr County Sherrif's Department that convictions had indeed
      happened. Their records still state that the convictions exist and happened on the
      15th of December in 2016.

61.    Heather Stebbins accessed the plaintiff's file on the information system and
saw he was convicted and saw the fines and transactions. She failed to fix
the false conviction and the failure to fix the already entered conviction
resulted in JD's entries remaining. In talking to JD subsequent to her accesing
the file and seeing the disposition she was deliberately indifferent and
could have easily prevented the propery, liberty, legal, mental, and emotional damage
to the plaintiff but instead didn't fix the records, train, or supervise and
supported her despite knowledge of her illegalities. She could have
just removed any improper additions to the records at that point. She knew
the property, liberty, legal, mental, and emotional injury because she was
an advocate. She made the connection by viewing the records.
She actually stepped outside her role by not acting and intentionally and maliciously
allowing a subordinate to make an illegal entry into an adversary's filing
in the information system. The failure to act was the substantial driving force
for the illegalities and she was the proximate cause for jD having a position
beneficial to Buster and Jesse's conspiracy.

62.    Rebecca Bolin was intentional, malicious, and deliberately indifferent by not
giving notice of a conviction. She joined an agreement with all of her clerk
and deputy clerk subordinates to not give notice of the conviction sentence
, fines, fees, and attorney fees and to never admit in the record why those
entries came to be. She had a duty to prevent Brian Duby and Terry Raney from
sending fictitious review hearing notices or any other below her from hiding
records and defying the plaintiff's requests. She also had a duty, upon seeing
a conviction and each strange material change, to investigate and fix its propriety.
Her failure to act was a substantial driving force for the injuries the plaintiff
sustained.

63.    Every clerk and deputy clerk defendant personally knew JD had filed the two
convvictions and they also knew that she went back and added the fines, forgotten
in her guilty haste. Because, of their agreement to protect JD, each neglected

20

their legal duty to report illegal behavior, forgeries, fraudulent records and all stayed silent. Terry told them before JD filed and told them all after she did, to reinforce their prior commitment. By 2018, JD would go from a lowly legal assistant to the LEAD Kerr County Clerk Position. She became the boss over all of the deputy clerk defendants. Since 2016 not one deputy has stepped forward to law enforcement and each is chilled from whistle blowing against their boss at this point.

64.   The plaintiff asked Terry Raney by letter who filed the convictions and she did not respond. Because of this concealment the defendant was deprived of notice upon dismissal. In December of 2022, JD would not have worked in ths case . She likely would not be the kerr County Clerk. Had she not helped Busters boy she wouldn't be the Kerr County Clerk today either.

65.   Unknown Kerr County Commisioner adopted the incorrectly designated user policy Judge Harris ratified the policy. Heather Stabbins ratified the policy. Each was the proximate "but for" cause. Each failed to supervise the other, and each failed to act. The knowledge of an unrestrained legal assistant in control of incalculable power to enter final judgments for any cause of actin can only be summed by totalling all of the values of every order she entered illegally. It is deliberately indifferent, purposeful and malicious to allow such power and so unrestrained. This exploit cuts to the very core of constitutional values bypassing all constitutional protections and it shocks the conscience that it can be done. It is terrifying to the conscience that it has been done.

## FABRICATION OF EVIDENCE AND OMMISSIONS

70. Jesse lies many times in his arrest report/incident report for incident 1601894 and these were used to charge the plaintiff with interference with public duties of a police officer 38.03(a) and resisting arrest 38.15(b) of the Texas Penal Code. Later these becameCR16-0666 and CR16-0667 when a complaint and information were filed based on these reports.

71. 38.15(b) was predicated on 36.03(a) which was predicated on a "lawful duty" that was predicated on fabricated reasonable suspicion.

72. Jesse gave conflicting very different reasons to initially chase the plaintiff and Davidson. Initially he used a suicidal statements to anstaff member facade. He said in his report that he had only overheard a anonymous staff inform Davidson that she had siad "suicidal statements" to another anonymous staff earlier prior to his arival. But, he gave no detail on these made up quadruple hearsay statements which allegedly came though two different anonymous parties. He also gave no statements on any investigation questions he asked prior to giving chase. A concise explaination is as follows:Jesse wrote  he overheard(lvl 1), anonymous staff(lvl 2), say Davidson said(suicidal statements(lvl 3), to some other anonymous staff prior to his arrival(lvl 4). This was not a report or an  monymous tip and it was not even framed as an immenent threat. This lie,remains uncorroborated.

73. later, in his probable cause affidavitt Jesse realized that "inform":was not an  order" So he jusit changed his narrative and wrote order instead of inform in his probable cause affidavits. At the MTR 1/26/2016, his new reason to have given chase became furtive movements. The truth is much simpler, Jesse gave chase because PRMS had a cease and destroy policy and had told the nurses and staff to be on the lookout for the plaintiff and  if he  is seen they must have him arrested on site because of the video he had posted of PRMC attempting a fraud scheme under color of law. This was a first amendment violation. All of Jesse's different stories are lies. There was no quadruple hearsay suicidal statments or furtive movements and these were all made up post-hoc and they contradict direct video

evidence, statements, and testimony. There was not a mistake in law or in fact by Jesse. It was an intentional and malicious illegal seizure and assault.

74. Jesse chased the plaintiff and his girlfriend Davidson because Unknown FRMC Staff #1 had requested him to do and informed him that he was making another video. And, Jesse being very familiar with the Stationia video which featured officer Butler, another KPD officer, gave chase right away on that request submitting to the cease and destroy policy.

75. Jesse lied in his incident report properties and this lie has big implications when it is comes into the context of the first amendment retaliation. Jesse logged that he did not know the plaintiff which showed he had a guilty and concealing mind because Jesse is a good friend with the plaintiffs little brother Greg Adams and has been since childhood. Jesse and Greg were in the same boyscout troop and because the plaintiff is only five years older he would be around at the house, at sports events, school carnivals, christmas tree lightings etc. Jesse and Buster were both friends of the family growing up, in some respects, and while Buster would be the Santa Clause at the Ingram Christmas tree lighting the plaintiff's little brother and Jesse would run around. However, as soon as the video of the hospital was posted online, from the perspective of the plaintiff, his friendship stopped because retaliation began.

76. Before Jesse gave chase he did not see the plaintiff or Davidson earlier, and they had not seen him. At the moment he did see them  ...  ... he was forty feet down the hall. He also had no prior knowledge of either of their medical histories, mental health histories or otherwise. When he did see them at a distance they were both walking calmly and peacefully filming and slowly opening the doors and exiting. He did not see either turn to look at him or other officers. There was no order to stop and he took his first step to chase agter the door had closed and the plaintiff and Davidson were in the publicly accessible hallway and her refusal for further medical services was already complete.

77.    Davidson had asked for and recieved permission to leave even though the act was
not required and was really only done to get more information in order to decide
if staying was necessary for her personal requirements. Neither the plaintiff
of Davidson had reports filed against them, no accusations, no weapons mentioned,
no crime alleged, no court order filed, or mentioned, no detainments, no convictions
or arrests, no cuffs on .. either, no guards had been posted, or ordered, or
requested, no doors had been locked, they weren't making any loud noises, neither
was intoxicated, neither exhibited mental disturbance(such as smearing feces
on the wall), it wasn't a high crime area, neither was witness to a crime, and
at the MIR Jesse, in a rare spurt of truth, declared that at the time he gave
chase he could not articulate any particular facts to give reason to detain
Davidson or the plaintiff.

78.    In Jesse's arrest report packet he lies at least 16 times on material statements
specifically to try to favricate provable cause to charge. Jesse also makes many
ommisions which if added to the arrest report packet would negate probable cause
entirely and those ommisions were also made to charge and increase the severity
and conjure immunity for his constitutional violations.

79.    Jesse's ommisions include but are not limited to:
His first physical contact with the plaintiff was a trained running pit manuever
that was designed to take him down to the ground by causing him to fall into
the void of the negatively supported right side of his body.
His first contact was made from behind the plaintiff with his right arm forcefully
to the plaintiff's left torso.
His first contact was as he was running up beside the jogging (not stopped) plaintiff.
The collision is not a collision at all but Jesse linebackering the plaintiff.
(This is admitted at the MIR.)
The plaintiff stopped because as Jesse applied physical force and yelled stop
he had lost his freedom of movement, and as he regained his footing he raised
his hands and surrendered . H.

He omits that he never declared he was a police officer and was behind the plaintiff at all times. In fact, he didn't even mention that the plaintiff knew or did not know he was a police officer and this is a critical element of resisting arrest and necessary to establish the mental state of criminal negligence for interfere with a police officer's duties. Because, it is predicated on the plaintiff ought to have known that his act would have interfered with a police officers official duty. And, at that pont he had no idea Jesse was police.

He reports that the plaintiffs ordered stop was obstruction but omits that  if moving the plaintiff were his purpose he would have yelled "MOVE" or "get out of the way" as well as "police."

He omitted that the plaintiff said "What the hell?!" as Jesse first hit him out of complete surprise. Wncih established no knowledge of Jesse or his fabricated duty; at first contact.

He omits that PrMC had a cease and destroy policy on the plaintiff.

He omits that Unknown PRMC Staff #1 requested he chase and arrest the plaintiff and destroy his video.

He omits that there was no order for Davidson's detainment.

He omits that the PRMC staff were not chasing the plaintiff or Davidson and had no authority to do so.

He omits that Davidson had already legally exercized her right to refuse medical attention beca' se she was hungry and they would not feed her even though they knew she had low blood sugar.

He omits that MHMR was called at his request not PRMC and that he only called them after the chase to fabricate reasonable suspicion to chase post-hoc.

He omits that shortly after Davidson was released to MHMR they released her because there was no reason to do otherwise.

He omitted that even though all of the staff was around he never got any coroboration from doctors, nurses, staff or anyone else on his suicidal statement lies.

He omits that he had no reasonable suspicion to chase or probable cause to arrest.

80.  Jesse's fabrications include but are not limited to:

Jesse said that the plaintiff was stopped, blocking him on his initial contact.

But his initial contact is the pit manuever.

He said that the plaintiff pulled Davidson through the doors.

He said Davidson mad suicidal statements.

He says he overheard a nurse informing Davidson and the plaintiff not to leave.

He says Davidson and the plaintiff made quick movements inside the ER.

He said the plaintiff attempted to push. Which is really a clever way to reframe
the plaintiff's showing his hands in surrender, maliciously.

He says the plaintiff held the west doors and that he saw it happening. He said
he saw this from 40 feet down the hall through imaginary chasing staffs and a
small 4" wide window.  1

81.  Because Jesse left such an immense void of truth to his intentional and malicious
framing of the plaintiff it will be easier to give a concise statement fo the
truth As explained above Jesse had extensive knowledge of the video posted online.
He had also visited youtube.com/Station1a and clicked on the dislike icon for
the video. This is the video of the attempted intimidation and seizure of the
plaintiff at PRMC the previous year. He also knew of the cease and destroy policy
order and told staff there that he would gladly follow it.

82.  As Davidson and the plaintiff walked out of her room headed toward the west doors
only a few steps away., Davidson was laughing and making a joke for the documentary.
The plaintiff was filming, about the room service. Becasue, she had low blood
sugar and they had denied even a small snack, the entire stay. The plaintiff was
fully attentive, interviewing and filming Davidson. They both opened the west
doors with the bump handles and walked out of the emergency room. They paused
and did a quick cameo after exiting, while the doors closed. The Unknown PRMC
Staff Defendant's had all gone to the ER exit door to watch the plaintiff and
Davidson, make the little cameo. As the doors closed they peeked through the small
window.

83.        The doors slowly closed because they were on hydrolic hinges and they only
look to the outside because on the outside there are no bump handles.
After the cameo, Davidson dramatically said for the camera, "I'm so hungry! Cmon!"
and took off toward the north exit of the lobby 30 to 40 feet away. The ER lobby
was completely empty. There was no threat of disturbing patients. She had a
right to be hungry after being there over an hour and informing them of her blood
sugar issue right away. She and the plaintiff asked for a snack for her several
times.

84.    Inside the ER Jesse was down the hallway as Unknown PRMC Staff #1 approached him
and in person with signs, gestures and speech requested him to go stop the filming
because the person filming was the person who posted the video on Stationla.
Jesse had been waiting for this opportunity so he did not investigate and immediately
ran to violate the plaintiff's first and fourth amendment rights. Jesse wanted
to be the one with bragging rights at both the police department and the hospital
as being the one who arrested the stationla poster. Jesse and the other officers
and staff were all on the lookout for him because of the cears and destroy policy.

85.    In attack mode as if Jesse were chasing a murder suspect he violently persued
the pair to carry out the effect of the policy. They were oblivious.
Pit manuever, also called the omitted arrest happens as follows: Jesse came from
behind the filming plaintiff while he was in stride. As he was heard yelling
"stop" for the first time he performed a trained running pit manuever that he
learned at the academy. The manuever is designed to topple, face first, a fleeing
suspect, who committed a felony offense. He applied the force of his right
arm quickly to the plaintiff's left torso. He timed this perfectly in order to
force the plaintiff's body weight and momentum into the negative void where his
left leg was forward and his right leg back when his body would fall there toward
the right, hitting the doors or falling. With nothing to support that side the
plaintiff had 3 choices fall, resistor evade denying the order to stop by jumping

to

the right and gradiating his speed, or the course he took, stopping as quickly
as possible and surrendering. In order to complete the third choice, and avoid
failing and being injured, he quickly brought over extended right leg around like
a running back. And, all of the momentum from the quick movement of the right
leg, the force of jesse's pit manuever, all of the body weight, and speed of
were great. This is the point in the audio the surprised plaintiff can be heard
saying "What the hell?!" as he was assaulted. His only turn, contrary to Jesse's report.

86.    The plaintiff stopped as quickly as possible. The plaintiff was able to stop by
quickly turning, using the physics of the turn like a wide reciever instead of
a twenty foot gradiation of speed, to follow Jesse's order. He then showed his
hands and cell phone camera. He  was stopped and surrendered completely. After
Jesse ordered stop, applied physical pit manuever intentionally and maliciously,
the plaintiff was then and there legally arrested. Prior to this excessive force
the plaintiff was not under arrest or detained.

87.    Jesse then hit the plaintiff like a linebacker completely unprovoked. The plaintiffs
limp body went backwards through two paynes of heavy glass and metal doorscausing
lots of injury, brain damage and later seizures. Some of the effects were immediate
ad others manifested over the next few days because the jail and hospital refused
to run a cat scan or an mri because they would be liable for the damages. All
of the excessive force and the omitted arrest are obvious and evident in the surveillance
video of the ER lobby. The lack of pursuing nurses is also evident even though
some would eventually quickly show up to perceive the loud breaking of the doors
and to see if Jesse carried out the cease and destroy policy.

88.    Jesse's report portrays himself as a hero trying to stop a suicide then getting
turned off course by a guy who was posted up at the door of the ER like a goalie
when he arrived, after he was fleeingand should have magically known he was being
pursued by cops. Then before Jesse had tried to arrest and before he had used
any force whatsoever this unknown guy tried to push him and because of those events

he and Anderson had to work together to take him down without uneccesary force.

89. But, the truth is he gave chase as requested by a Staff who explained for videoing past and present. Davidson had already legally refused medical and left the ER without incident and both retained all of their legal rights. He acted as a henchman for PRMC's policy and never declared he was law enforcement. He only yelled one single order and as hre did he assaulted the plaintiff as he followed it. His assault then forced the plaintiff to make a hobsons choice of take injury, resist, or stop and when he stopped the henchman hit his arrestee like a football player. Then as his body was in physical shock he tried to avoid further injury so he was charged with an additional charg. And Anderson, did not assist with the linebackering as Jese lies in his reports. The plaintiff was already down in physical and mental shock as he arrived.

90. Jesse didn't even have an ided of what he could use to try to establish reasonable suspicion but assumed because interfere with public duties is so broad he'll be able to make it up pot-hoc. But , this didn't hold water and the prosecutor chose not to bring this to trial with direct evidence of material fabrication and no coroboration, and 4th level hearsay, and failure to identify and state his purpose.

91. Allison Baker fabricated through omission leaving out key evidence including J Gonzalez audio and video and his supplement report. This evidence waa also material showing Jesse scrambling to come up with a reason to chase post-hoc and saying false accusations of assault against himself. it also will reveal information about the video deletion and the PRMC cease and destroy policy and his real reason to chase. This evidence would have negated reasonable suspicion to chase.

92. Scott Monroe recieved exculpable evidece beneficial to the defense in CR16-0666 and CR16-0667 while preparing to prosecute the MTR for B1475 and B1476. He had a duty to disclose the contents of the prosecutors file to the defense in the misdemeanor because it was material. And, he knew that the evidence would have proved beyond a reasonable doubt that the plaintiff did not conit the charges of resisting arrest and interfere with public duties of a police officer.

93. The material evidence includes the testimony taken by deposition, or statements and also notes related to the interviewing of Lynn Bond. This information was proferred subsequent to subpoena and included that Davidson was not ordered by Doctor or otherwise to remain at PRHC. And that in fact, she had permission to leave and had left before Jesse gave chase. It also would have revealed that there was a cease and destroy policy and and because of it, and the notorious Stationla video, Jesse wassrequested to arrest the plaintiff and destroy the video.

94. Scott Monroe intentionally concealed the contents of his prosecutor file for B1475 and 51476 in the 198th district court to prevent the plaintiff from bringing puvlicity to the hospital and Jesse and to keep him from beating the charges in the Kerr County Court at Law. Through this concealment Monroe and Baker treated the plaintiff different than any other defendant in a criminal case.

95. Scott Monroe's prosecutor file contains many mentions of Stationla and the reasoning for Jesse;s animus. It also contains affirmitive notes that Jesse outside of his own statements had no reasonable suspicion to chase, it acknowleged the original omitted arrest, as an arrest. It also acknowleges the unecessary force and the number of false material statements made within Jesses reports and affidavitts.

96. Knis Keller's statement and video is all subsequent to the arrest and its conclusory staements. allgedly from Davidson and the plaintiff are more attempts to create a suspicion to chase post-hoc. Point 5 contains lies which are hearsay and post-hoc. Davidson advised she was dropped off. at the hospital earlier for having suicidal thoughts." First, it doesn't make much since to drop someone having suicidal statement off. Second, it is untrue. Davidson was not dropped off, she was brought by her mother and sister, patricia and Elizabeth Peoples. They waited until about 20 minutes after the plaintiff arrived and asked him to look out for her and make sure she gets home. She was not there for sicidal statements, she was there for other reasons. One of which required urinalysis and blood work.   Keller also writes [the plaintiff]

"... came to the hospital to help Davidson leave when she wasn!t supposed to." this is also post-hoc and conclusory. It is true that the plaintif went to the

hospital to help Davidson. But, to comfort her, give her a ride after, talk to her and get what she needed. She was always free to go. The plaintiff was in the room most of the time and at no point had anyone told her she could not leave or make a requirement or order to complete any process or request to leave prior to leaving. This was true with or without the plaintiff's presence. Statements made by officers which do not argue the fact that she was given an order to stay prior to leaving and refusing medical, which was her legal right to privacy, so they chased her and the plaintiff down like murderers for a non-emergency, non threat situation, causing harm and injury to the plaintiff, a bystander, are absurd.  There is not now, nor has there been any unfabricated non-conclusory facts to prove this because it is not true.

97.  Point 3 conclusively says " a combative male subject", but the plaintiff was a victim. According to Jesse's heavily dishonest reports he was never combative. At one point he tried to construe the plaintiffs hands being shown as an inchoate push, but he does not mention actual physical contact being made, which would not be an attempt but a push.    Point 6 "Jesse ... didn't know if she was intent on hurting herself" puts one more level on Jesse 4 levels of hearsay because Jesse's only proposed knowledge of suicide is him overhearing and anonymous staff, as discussed earlier. But, this statement by Keller doesn't speak to suicide, it speaks to mutilation which is not suicide at all. As discussed Davidson had no weapons nor had any been alleged so based on Kellers statemnets this was no emergency.

98.  All of the comments that come from Jesse are lies post-hoc and hearsay in Kellers supplemental report. The conclusory statements and lies told about Davidson and the plaintiff are malicious and intentionally placed to try to create a reasonable suspicion in the void of absolutely no corroboration by any medical staff trained and having personal knowledge of Davidson. This report was produced by Keller to conceal the truth and to charge the Stationia poster with as many crimes as possible. This vielates the plaintiffs 1st, 4th, 14th and equal protection clauses because they treated him differently than every other person in his position by fabricating evidence to charge.

99. Jessica Adams wrote in her statement that the plaintiff pushed Jesse at the ER doors. This was a lie and she wrote it because Jesse told her to write it. Jesse was unaware that the surveillance video could see he was not pushed. Jesse accidentally made a freudian slip with a guilty conscience in his report. Though Austin Beal took the statements as evidence by his signituree, Jesse claims that he took them, swearing that he took police reports for her and Elizabeth Smith. Yet another lie by jesse and it calls into question the process of creating the documents on their face. Two people are legally swearing under oath that they took the dishonest report, and one of them is the alleged victim. Austin was well aware of the fictitiously entered conversation and he helped her to word it right. This agreement was done to charge the plaintiff with interference with a police officers duties and resisting arrest. It was done maliciously and intentionally.

100. Jessica Adams and Elizabeth Smith's statements, and Jesse's probable cause affidavits and incident report and its properties; Allison Baker's ommisions; and the entire arrest report packet; and Kris keller's incident report were all used to strategically and maliciously, decieve the magistrate and get him to charge for resisting arrest and interfere with public duties of police 38.03(a) and 38.15(b). The magistrate would be decieved and did charge with these charges, later.

101. Elizabeth Smith lstated that the plaintiff was with Davidson when she checked in. This is false. Then she also talked about a mysterious man in a grey shirt helping 2 officers. Surveillance shows Jesse then shortly after Anderson would arive after his linebacker attack, Anderson would jump on the plaintiff... The only person in a grey shirt is the plaintiff who in fact did assist the officers becasue upon being told to stop, he stopped. If the other officer is Keller and not Anderson then this statement confilcts with his statement that he gave chase agter recieving a call for assistance with a combative male subject(allegedly).

102. A        conflicting idea to every statement and fabrication is in reality there was no reasonto run from anyone. There was no detainment and any orders given to stop,

stop from any staff members were not directed at the plaintiff or Davidson.

103. Jesse was called to the hospital to investigate another couple who did not have permision to leave and it is this couple to whom any orders or audible requests to stop were aimed. It is not plausible that both would run to escape a non-existant detainment. Jesse finally admits at the MTR that there was no detainment. But, evidence of the surveillance video shows the plaintiff trying to keep up to film, then trying to protect the footage by passing it to Davidson. It is plausible that while making the video, after not being fed, she would act dramatically and safely run the short distance across an empty ER lobby to fade into the next scene. There was evidence of this happening but Jesse conspired to have this evidence destroyed after he attacked her cameraman and deleted his video.

104. Every defendant mentioned who omitted evidence omited it to charge th plaintiff with the crimes he was charged with. The omitted evidence, if it were used, would have persuaded the magistrate ordering the information, and complaint, used to charge, to not charge. Every defendant mentioned who fabricated evidence fabricated to charge the palaintiff with the crimes he was charged with. The fabricated evidence, if it were not used, would have convinced the magistrate ordering the information, and complaint, used to charge, to not charge. By not convincing the magistrate to not charge based on the real evidence, and truth instead of lies, each defendant mentioned persuaded the magistrate in charging.

## CEASE AND DESTROY POLICY

105. Peterson Regional Medical Center was engaged in a scheme of extortion that was facilitated by Kerrville Poice and the Kerr County sheriff's department at any given time during the events giving rise to this complaint.

106. The method would acquire thousands of dollars from medicare and medicaid from both the Federal and State governments. This billing would happen if Mental Health and Rehabilitation (herein MHMR) would be called to evaluate a patient. In theory, this is a good program, however, the Kerr County Hospital District funnels the money into the county and city and this conflict leads to unconstitutional and illegal psactice.

107. This scheme happens when a patient shows up to the hospital having some sort of issue not rising to the level of emergency. At that point the patient is held and asked questions related to mental illness such as are you a threat to yourself or others, have you ever attempted suicide. The practice becomes divergent from, constitutio law when all of these questions have been answered and the patient is check by a doctor who then determines that there is no emergency or threat nor need for detainment. But, then PRMC staff will not let the person leave and continues to bill for emergncy service.

108. It was the practice of PRMC in 2015 and 2016 to call the police or the sherrif's department after a person (already cleared, and post questionaire and threat analysis) on their own voluntary free will decided to leave the ER . First, PRMC staff would threaten to have the individual arrested if they attempt to leave. Then they would follow through and call if the individual refused further service and left. The police were not called, necessarily, to arrest the person in the sence of to take the individual to jail. But, the purpose is to threaten the individual, under color of law, that if they leave the hospital the officer will find a reason to lock the individual up in jail. This is a 4th, and 14th and Equal Protection violation.because The individual is now detained at the PRMC ER indefinately without any legal reason other than PRMC has not yet crossed the medicare and medicaid billing thresholds of MHMR has not yet arrived, or PRMC billed for an evaluation, or PRMC is continually billing for the facility and staff claiming mental health or emergency services.

109. The plaintiff placed a video online of a PRMC staffer after she had called the police for this very reason (fraud) after he had already voluntarily answered all relevant questions over many hours. But, as he left he filmed what happened next. While posting and labeling to hide his true identity to protect against retalliation by PRMC and the Kerrville Police Department, in a video hosted at youtube.com/Station1a, The plaintiff exits the hospital and is awaiting his ride as a woman exits the hospital following him. He had been outside for several minuts and was unaware of the potential

34

attempted extortion and intimidation that was about to take place. A Kerrville police cruiser approached. It had been called by the PRMC staff. The very call itself was a waste of valuable city resources. Two officers got out one of their names was Officer Butler. The plaintiff calmly filmed as they approached and as they realized the plaintiff was filming with his cell phone. At that point rather than institute threats of jail outside the facility like all of the staff (except his doctor) had said and threatened inside the facility, becasue of the camera, she folded her hands and aquiesced to the plaintiff's pleas for adhearance to his Fourth amendment right against illegal seizure.

110. The plaintiff had never been a threat, nor exhibited any threat-like behavior to himself or any other person, or property, and there was no reason at all to call police, ~~~ ~~~ ~~~ ~~~ ~~~ on him, at all. No laws were alleged to be broken by him, there was no detainment etc.

111. After exchanging cordialities for what on its face seems like no reason at all to have been called the officers returned to their car and lefty They did not ask why they were called, this was already known. They didn't tell the staffer not to  eall unlesse she has legitimate reason. Because, this was the practice. The only thing that made this example of  their intimidation tactic to bill medicare and medicaid for uneeded and unwanted services different is that this time in a surprising move the mark(the plaintiff), had a cell phone camera.  Any pedestrian seeing this incident would have assumed that the plaintiff was in the wrong. With two cops and a PRMC staffer trying to force him back into the hospital, , this color of law presentaion was not used only to intimidate but to also conceal the unconstitutional acts. But, this video caught the inside scoop with 3 people conspiring to elicit State and Federal resources at the expense of the plaintiffs freedom.

12. This video is of public importance because it exposed a practice that was widely accepted by both the Kerrville Police Department and the PRMC hospital. The policy of calling police on people is very intimidating because most people will not go against police, even if they do assert their right to refuse against the hospital. In the video when the police left and the staffer went back inside it was evidence that the cops were called when they should not have been and that the plaintiff was not legally detained ~~~ ~~~ ~~~ ~~~ ~~~ ~~~ ~~~

inside the hospital. Without paying close attention John Q public may miss this point.

113. This video was posted not because the cops were called on a crazy out of control guy, they were called because (as can be seen in the video) the plaintiff was respectful, law abiding, calm and obeyed and responded faithfully to each request and was taken advantage of for his submissiveness. They thought they could use him as a stool pigeon to fill their bank accounts and meet their quotas. When people acting under the color of law take advantage of people for employment interests or personal gain it chills compliant people from being compliant.

114. The plaintiff also had another video which was of public importance like the others mentioned which involves himself trying to file a complaint against the Kerr County Sheriff's department deputy who had showed up to his residence. after being called by him. Then they destroyed evidence by willfully erasing the fingerprints off of a 9mm holowpoint bullet left on his front porch after an altercation with a stalking exgirlfriend. The video was filmed on Christmas Eve because the dispatch had told him that in order to file the complaint he needs to come by the next morning. Which, happened to be Chrismas Eve.

15. After arriving every deputy made filing the complaint impossible because instead of dealing with the plaintiff as a concerned citizen trying to correct a serious error of a public employee, the Officer's there went in to Blue Line Backing mode and 1) did not give paperwork for the complaint, 2) called an officer who had nothing to do with complaints to intimidate the plaintiff from filing a complaint, 3) Officer Arredono aggressively pursued intimidation tactics by bursting into the lobby quickly and demonstrating the futility of complaining by ushering the plaintiff outside, instead of to a desk to talk about the incident. 4) Then 4 officers surrounded him in the blind spot of the cameras very intimidatingly and unnecessarily. 5) Then after the plaintiff left the department Arredondo jumped into his cruiser and harrasingly followed the plaintiff pulling him over within a block of his house. 6) Then Areedondo wrote a fictitious ticket for an invalid/suspended license which could have violated his probation. 7) Citation 040918 for case number 15-0529 which was filed on 12/30/2015 was dismissed

upon proof that he had a valid license.  This was malicious, intentional intimidation for trying to file a complaint and filming the process,

116. In another instance of intimidation by the law enforcement in Kerrville J. Gonzalez one of the defendants in this case pulled over the plaintiff without any reason to do so.  After the plaintiff showed him his phone was recording he asked J. Gonzalez why he had pulled him over.  J.Gonzalez stated that he turned without using a blinker which was untrue.  Then J. Gonzalez wrote the plaintiff a ticket for having an invalid license just as Arredondo had done. This was malicious intentional intimidation for trying to file the complaint and filming it, posting it, and leaving it online. This was filed on 4/13/2016 as citation number 040916 and case number 16-0157. It was dismised in the same manner as the previous invalid license case. Dismissal cost about $30.00 for each case and took a day  : of the plaintiffs schedule to go to the DMV for proof of valid license.

117. Because of the retalliation and the evolving law at the time, prior to Turner v Driver, the plaintiff did not want Kerville to be left behind in the citizens rights movement like Galveston had been left behind in the civil rights movement until Juneteenth. He filmed law enforcement and investigated and posted on his channel. posting was already a protected first amendment right. There was no other person in Kerrville at the time that was willing to bring Kerrville into the fold and film and assert rights and hold authorities accountable. In a way, because of  what happened at the hospital (in the original video of the attempted seizure) and what had happened at the sherrifs department, the plaintiff was chosen for this opportunity. He did not seek it out. He just applied technology and followed procedures and law and the law enforcement are the ones who made his videos interesting by not behaving as constitutional protectors. Once the intimidation was seen and recorded, to the plaintiff, it could not be ignored, because he wanted to make sure as few people as possible were intimidated under color of law in the future and believed the way to do this was to start a movement to appoint a new Sherrif and new leaders in the police and hospital.

118. The Kerr County hospital District Board Unknown Hospital Board #1 - #4, 1) created a
policy for ER staff to keep an eye out for Russell Adams, 2) if he is seen have him
arrested 3) Destroy any video content in his posession. 4) Stop any filming. This
will be able to be proved by depositions of some hospital staff and could have been
proved by the active video content which Jesse searched for and had destroyed in concert
with Defendants Keller, j Gonzalez, Austin Beal, and Unknown PRMC Staff #3 and Anderson after
Defendant Keller brought the plaintiff's filming phone back and Jesse and he watched
the video.

119. One exculpable scene in that video was taken in Davidsons hospital room prior to
he and the plaintiff walking out. The plaintiff was filming because Davidson had
asked for food and he had asked for food for her. It had never been brought. She
had low blood sugar and it seemed like this would be a pretty good scene to add to
the documentary that they had been working on. After entering quickly and exchanging
cordialities with each, unknown PRMC Nurse #1 noticed the phone being held up filming.
She told the plaintiff(on video) that he could not film in that room and the plaintiff
asked why. Stoic she stammered and said "you are the Station1a guy." The plaintiff
gave no replu response but said "Why may i not film in here? this is a public setting
and we consented.. Besides, Texas is a one party state." She told the plaintiff(also
on video) that there were some very influential people who said he could not film
and to take his phone away and have him arrested when he comes back to the ER. The
plaintiff asked "Who? your supervisor? I don't care about any made up rules and your boss
is not getting my camera under any circumstances. She said " It is way over my supervisor's
head. The guys at the top who run the district want you stopped. And, If they want
your camera they will get it."

120. The plaintiff said they were about to leave anyway and Davidson said "Yea, can we
leave now? I am starving!" PRMC Nurse #1 said I would like for you tostay until
your urinalysis results come back but if you really want to leave I cannot keep you
here." The Plaintiff said, "Does that mean that she can leave and that noone is going
to mess with her like in the other video?"

(referencing the online video) She said "Yea." then She got up quickly and left the room. Davidson had expressed apprehension about making absolutely sure that she had had permission in person after seeing the Station1a video. Now completely satisfied that this had occurred they both would continue to film, get her things, and then exit the room.

121. After Jesse would later arrest and use excessive force on the plaintiff. The plaintiff 1)would yell that he was preserving the evidence(video) as he tossed the phone to Davidson. 2) Shortly after Jesse can be heard in audio franticly requesting that officer Keller locate the phone and bring it back to him. 3) Then jesse can be heard franticly asking Keller if he located the phone. 4) Then later as Anderson and Jesse took the plaintiff to the Kerr County Jail as they pulled up to Water Street from G. Street before they turned right and drove the last mile to the jail, Jesse and Anderson stopped the car and turned and asked the plaintiff if that was the only copy of the video. The plaintiff responded truthfully, that it was, and they both looked at eachother and said "So, it wasn't livestreaming?" Then after the plaintiff responded no they laughed out loud. Because of the facts it is evident that the video was a substantial reason for his initial arrest. Later, he would conceal the initial arrest and resequence and lie and omit material parts of his police reports and probable cause affidavits. With all of the attention and animus related to the video and phone Jesse, J. Gonzalez, Keller, never once suggested that it was a motive, why, and why it was not logged as evidence or returned to the plaintiff instead of Davidson.

122. When the phone was given to Davidson, a Ccleaner App was installed on the phone and the video had been deleted. The file was not recoverable. Although, had it been accidentally deleted it would have been recoverable because this kind of deletion is really just marking the memory address as free not replacing its contents. The plaintif had recovered videos on his phone several times before. He took the phone to a computer place in kerrville for expert opinions after this malicious deletion, after bonding out, and going to the hospital for treatment.They said that the phone had been zeroed out in the freespace.

123.        After Unknown PRMC Nurse #1 left Davidson's hospital room she signaled
the unknown PRMC Staff Defendants that the Station1a Videographer was present and
videoing in Davidsons room. Unknown PRMC Staff #1 told Jesse that the plaintiff
was the Station1a videographer and that he was filming. Most of these quick communications
were done with signs and were not meant to be heard or recorded. But, Unknown PRMC
Staff #1 did request a seizure of the plaintiff out loud to which Jesse complied.
The basis behind Jesse and the Unknown PRMC staff #1 plaintiff to seize the plaintiff
was the Unknown Hospital Board Defendants policy of cease and destroy which was well
known to Jesse and the staff in the ER. The purpose of the Unknown PRMC nurse #1
signalling all of the staff that were present was the cease and destroy policy. This
is to be inferred(based on the chain of events, such as no probable cause to arrest or reasonable
supicion to chase, fabrications were made, ommissions were made, destruction of evidence
was done) that this agreement happened. Depositions will lend more light to the
form of this agreement and the specific words and signals used.

124.  The plaintiff did not post any more videos of his own of PRMC or Kerrville police
after this at Station1a or at his Yyoutube.com/Station1a account. He did not engage
in any further investigations or research into the illegal policies of either PRMC
or Kerrville Police. Very contrary to past conduct, the plaintiff did not bring his
camera phone to the hospital when he had to return to get checked out for his injuries
after leaving jail. The injuries suffered, which were serious, were a matter of public
concern because the plaintiff had been injured because of the hospitals policy and
now had no other option but to return to the hospital to get them to treat the wounds.
He had already been denied treatment at the jail and it was foreseeable that the
hospital would try to minimize and dispell as much liability as possible.
Besides the physical injuries the plaintiff sustained constitutional injuries including
his First amendment right to post video content, to film in public, the right to
be free from retalliation for expression a constitutionally protected idea, and the
right to be free of destruction of protected content and evidence of criminal and
unconstitutional conduct.

125. County, District, city, and municipal constitutional violations are always a public concern by definition. The first three words of the Constitution itself (in the preamble) arre "We the people." Bacasue of all of the events described, the plaintiff was forever chilled from expressing his views and ideas in the public venue based on fraud and illegal siezures to intimidate for that purpose.

126. It is believed, by the plaintiff, that the public still do not know the truth of what happened, that PRMC and the Kerrville Police Department are still intimidating patients for the sole purpose to bill the state and federal governments under emergency pretexts.

EXCESSIVE FORCE

127. Directly after Jesse used the pit manuever and after the plaintiff had surrendered and shown he had no weapons he was under legal arrest. Being stopped there was more than a split second for Jesse to make a decision. He had an opportunity to stop and think about his next move. Talking or even giving further orders were both available.

128. The plaintiff had followed his last order and there is no indication or reason for Jesse to believe he would not have obeyed another one. Jesse asserts in his report and probable cause affidavits that his real problem with this whole situation is that the plaintiff was in between him and Davidson. If this is true, then he could have said a single word "MOVE" or "MOVE ASIDE". Both would have been within the realm of appropriate force he could use against an unarmed non-fleeing, non-supect if his true motive was to detain Davidson. To take the excessive force into the context of what Jesse saw and believed at the time he used it it must be ascertained what the risk of injury was (if any), the risk of her acctually successfully leaving (if any), and whether excessive force was even necessary in view of all of the circumstance known.

129. The following circumst5ances are not admissions of events within any fabricated report, affidavit or statement, They are used only to show that even in light of all evidence used to charge, the circumstances show objectively and subjectively that the force used was excessive.

First, no crime had been commited by Davidson.

1) There was no immenient threat of suicide. Keller wrote that Jesse said he didn't even know if Davidson was intent on hurting herself (much less killing herself). And, in no accounts fabricated or otherwise were attempts or imminent intent (threat) mentioned.

2) There were no weapons around or mentioned.

3) There were police cars at every exit of the hospital blocking all of the entrances for another female, who Jesse alleges he had been called to arrest or force to remain at PRMC.

4) Jesse did not use his radio or call for help until after he assaulted the plaintiff.

5) Obviously other officers are around and officer Keller and Anderson appear in seconds of his assault.

6) There is a massive field all around the hospital if Davidson were to take off outside on foot and also make it past all of the police in the parking lot. It would have taken her 10 minutes to cross the field giving plenty of time to all of the officers on stand-by to circle around, or drive across the fair ground field to get her without injuring anyone.

7) If he thought her intention was to leave in a car, she would still have had to get into the car, start the car, pull the car out of its place, and then somehow, wind through all of the cop cars in the parking lot who could stop her, flank her, or block her. (In lack of a radio this may seem plausible but a simple utterance would have focused each unit on her, preventing driving off right away.)

8) Even if she were to make it out of the parking lot J. Gonzalez was right off of PRMC property in his police car and arrived seconds later after hearing Baldwins radio call.

9) The plaintiff certainly had not been accused of a crime.

10) If Jesse believed that he was fleeing, he was now stopped and no longer doing so.

11. The plaintiff had no weapons, he had already shown his hands and Jesse saw his hands only had a cell phone in them.

12.) Because this was a hospital, and at least the plaintiff or Davidson was a patient, there is a real possibility that she could have really been pregnant and Jesse's tackling of her, or tackling of the plaintiff pushing him into her, could have murdered the baby she was carrying.

13.) NO injuries had taken place and if Jesse thought one could take place he could have easily asked the (still anonymous) staff, shill whether or not it is a immediate possibility. The response would have been that it was not even a possibility. Such minimal investigation by Jesse would have prevented an unlawful chase, two excessive force actions, and two arrests to the plaintiff.

14.) Jesse could also have said loudly "MAM. I'm Police. I need to talk to you for a second" when he was down the hallway out of view. He admitted he saw both walking leaving plenty of time for quick questions to Davidson or the plaintiff and announcing his police presence.

15.) There was an opened automatic door right behind the plaintiff. This means both paynes of that door on the east side of that door were together making a double layer heavy glass and metal barrier which was sure to cause injury.

16.) Jesse had a taser and could have used it threateningly if orders didn't work.

17.) Jesse never mentions the facts of either instance of excessive force and as regards the instances of force gives only the conclusory statement that he and Anderson used minimal force to detain the plaintiff.

18.) Up until the second excessive force causing injury(because Jesse omits the first) his reasonings for all of his actions (in reports and affidavits) are to detain Davidson. Although, he never said MAM, and never manifested this intent. But suddenly, as the excessive force is applied all of his actions are predicated on arresting the plaintiff, and Davidson's life and death pursuit through the ER causing injury to third parties, is no longer his priority. A general radio signal is enough to detain her. This call went out, as it would have gone out before his chase and assault, to all of the surrounding units. This proves in the immediate circumstance

that a single radio call would have been plenty to detain Davidson and protect the plaintiff from Jesse.

130. The reasonable law enforcement officer would say that with all of these things in Jesse's immediate knowledge that hitting the compliant stationary plaintiff like a football player into heavy glass and metal doors would not have helped to manifest the intent that he alleges in his reports. That, he was trying to save Davidson from herself.

131. Jesses very next move after the plaintiff surrendered was called a collision in his probable cause affidavits and police reports. But at the motion to revoke he called it a decision to linebacker the plaintiff. Although, the hospital surveillance video had not yet been subpoenad by the plaintiff Jesse exhibited a guilty mind for this act by trying to share the responsibility with Anderson by stating in his reports and affidavits that anderson had assisted him in the takedown. But, Anderson did not arrive until after the plaintiff had already been attacked and seriously injured with the intentional hit. The following fabrications and ommisions were used to manufacture false probable cause to arrest and to charge the plaintiff with 38.03(a) and 38.15(b) of the Texas Penal Code.

132. Jesse fabricated this attack at the ER door was his reason to arrest. Jesse intentionally omitted that the plaintiff was following orders and he stopped, and that he had already attempted a takedown manuever and was unsuccesful. Jesse fabricated that the plaintiff turned twice. Jesse omitted that he did not identify or order or ask the plaintiff to move out of his way at any time. Jesse fabricated and twisted the plaintiffs surrender with a sly placed conclusory statement that the plaintiff made an attempted push" an inchoate push. Which, if it is considered factually looks exactly like a person standing with his hands shown but the crime would carry a necessary intent to push. All of the plaintiffs moves were following orders and he never intended to push Jesse. In fact Jesse is the one who would assault the plaintiff in his second attack. Texas has no duty to retreat and without orders to do so and knowledge that

133. Jesse was a plice officer attempting to detain Davidson the plaintiff showing his hands and stopping as soon as possible was in line with the plaintiffs real intent to r....

to follow orders. He needed to get control of the situation so that he could ascertain why he is under arrest and show his evidence of the video that was being recorded, lawfully. At this point the plaintiff had no idea why Jesse had just arrested him.

134. Jesse did three things that were'nt done just to charge. They were also done by him to conceal his guilt for using excessive force. First, he omitted that he could have just kept on running beside the plaintiff before he used the pit manuever, if he were not his intended target. Blowing by the plaintiff would have negated all of the claims entirely. Second, Jesse went to Jessica Adams and then told her he was pushed by the plaintiff and to make sure she puts this in her statement. Third, Jesse was heard in audio telling other officers and bystanders that the plaintiff came from behind him. Later, at the MTR he wouold recant this and say that he made a simple mistake in saying it. This was not a mistake. These acts were all done intentionally and maliciously to conceal that he used more force than was necessary by trying to pretext that it was necessary in his fabricated narrative.

## JUSTIFICATION AS A DEFENSE

135. Texas Penal Code 3.91 gives a person the right to resist arrest to prevent further injury regardless of whether the arrest was lawful or not if the excessive force an officer uses during the arrest is prior to the resistance, the force is used to avoid further injury, or the apprehension of further injury, Jesse twice used dangerous excessive force prior to the protective force he alleges the plaintiff used. That force is the plaintiff's pulling his hands to the front of his body in an active move.

136. Jesse alleges no other force applied before or during the arrest. Although, he mentions an attempted push which is contradicted by the video. It was really a showing of hands in surrender. But, even prior to this Jesse used unecessary and excessive force by attempting a pit manuever before manifesting his presence or manifesting his purpose. That act potentially could have caused great injury. But since he omitted that whole incident Jesse's alleged arrest began with Jesse linebackering the plaintiff through heavy glass and metal doors for allegedly stopping him from detaining Davidson.

137. Both the excessive force and the reason the plaintiff stopped are discussed in length supra.

Then, the plaintiff moved his hands, which is later classified as force against the arrest, to prevent further injury. He was not moving to prevent an arrest but had many injuries just caused by Jesse and some that were exacerbated by hitting the doors and floor and then when Jesse and Anderson put their body weight on him. The plaintiff did not use great force, only enough to prevent further injury, and he had a right to have an apprehension of further injury because Jesse could have used many safe methods to affectuate an arrest but he chose assault. But his intent was to punish and hurt the freelance journalist and to get the video, then arrest second.

138. As Jesse linebackered the plaintiff he caused great injury discussed infra. The injuries include ingries to his head, neck, shoulders, back, torso, arms, legs, knees, and physical and mental shock and anguish among others. All of these is relevant to his reasoning for justification as a defense because the plaintiff was trying to prevent any more injury. Immeadiately afterward, there were some effects that affected his mobility such as physical and mental shock; spasms in his shoulder, arms, back, neck, arms; popping in his shoulders and wrists; and a short period of blackout.

139. As regards the plaintiff's shoulder, arms, wrist, and elbow on his left side, was spasming and had a charlie horse of from near the shoulder that caused it to seize and bend at the elbow making it impossible to move it backwards at the shoulder. This shoulder and arm were in great pain and it struck the doors and the ground and an unidentified object. The wrist on the right side that was holding the phone which

140. Jesse kept trying to pry from the plaintiff's hands was popping and dislocated and required the plaintiff to stretch it forward to relieve the pressure, release the phone( which was an impossibility because the hand was locked closed and the plaintiff was unable to open it without first straightening it). The plaintiff exerted the minimal force necessary with his arm by pulling it forward straightening it out relieving the pressure on his dislocated wrist and in doing so was then able to release

the phone. which he did. At that point the charlie horse in his left arm relaxed
because of this manuever just enough for him to force his own arm backwards again
to allow Jesse to cuff it without any further injury. Jesse grabbing and twisting
on the popping dislocated wrist was causing sever pain and the popping caused an
apprehension of a broken or further broken wrist.

141. As regards the plaintiff's left arm, in 2016 after a severe shoulder injury Dr. Pulia
the Ex US ski team orthopedic surgeon performed Arthroscopic surgery and did some
reconstruction to the rotator cuff after a supra spinata syndrome. This injury even
after surgery was never fully recovered and would hurt and it had a markedly loss
of range of motion. The portion of motion which was lost is the dexterity to move
it to the rear past the center axis of the body. This is the area that Jesse was
trying to force the arm into, and what he seem s to percieve as active pulling to
the front on that side is not pulling at all but a real physical disability to comply
with that want of the officer. Of course, because of the assault, the plaintiff had
also suffered great inury on that side. The injuries to that side included spasming
and great pain up into the shoulder forcing the shoulder bone which had previously
been made rough and was not covered with softer joint tissue, push up into the bare
bone inside of the joint which had also been abraised in the past during the injury
giving rise to the surgery. This lack of soft tissue inside of the joint was one
of the factors that made the initial surgery a necessity. Without the soft tissue
the shoulder bones rub together without any protection (make a grating grinding
popping sound) and it feels like sand paper is in between them. After the surgury
this problem had been fixed. After Jesse used his excessive force it forced the plaintiffs
arm to move in a direction it had not moved in and this made the initial pop and
began the grinding afterward. Immediately because of the very deep pain he had no
control to move the arm and it would only be moved in various directions in hopes
of finding a less painful way backwards. Then moving it directly back, was
an impossibility. The plaintiff only moved this arm away from Jese to prevent further

injury and pain.

142. Interestingly, Jesse did not suggest multiple pulls and never suggested which hand moved and the order it moved. The plaintiff was having spasms all over his body and was in physical and mental shock that made even understanding and reacting clouded with pain and egress from pain. However, the plaintiff after straightening his right arm and waiting for his right to relax was able to assist Jesse in putting the hand cuffs onto him without further injury.

143. After the cuffs were on Jesse told the plaintiff to get up pulling his hand up. The plaintiff, with Jesse behind him, tried to stand without the use of his hands. In standing he realized how his knees were also injured from Jesse's assault and he and Anderson putting body weight onto them. This was manifested as they buckled causing the plaintiff to lurch forward(to catch himself)with his legs because his hands were cuffed. He was trying to prevent further injury such as a face plant onto the concrete. One went forward, but then the other had to go forward because the speed was too great and it took a step or two to prevent falling onto his face. He did however sustain more injuries to his knees because after slowing to a speed which allowed him to prevent a face plant he dropped to the ground onto his knees. His knees being the lesser of the two evils(and less injury than a face plant), falling safely. (Relatively.) Jesse should have rose up first then walked in front of the plaintiff instead of prompting him to rise without support in front of his person. Without that necessary supprt the only thing the plaintif could catch himself  with was a forward step.

144. At that moment the plaintiff stated his claim to notify all who were listening that they could expect litigation. He recited a§1983 false arrest claim. That he was covered under the constitution, that he hade done nothing wrong and was being arrested, without probable cause of any crime, and that he has evidence of it that needs to be protected. This is the phone video which Jesse,Keller. J.Gonzalez. Beal. and Unknown PRMC Staff#3, and Anderson

had deleted off of his phone, and to which he seeks an adverse inferrence.

INJURY

145. IMMEDIATE INJURIES: severe pain; mental and physical shock; spasms and weakness in arms, shoulders, knees, hands, legs; blackout; stun; sprained neck; bruised legs; contusions on legs, arms, hands, head, back, shoulders; concussion; dislocated right wrist; severe cramp(charlie horse or frog) in right shoulder; exacerbated left shoulder condition causing grinding, abrasion, imobilization; exacerbated neck condition, 3 slipped disks in the neck; pain and suffering; mental and physical trauma

146. LONG TERM INJURY: brain damage(a T2 flair of scar tissue) between the parietal lobe and the temporal lobe on the right side of his brain behind and above the ear; permanent degradation of the left shoulder condition; permanent degradation of the neck condition; seizures; memory loss; confusion; mental trauma; pain and suffering.
The Kerr County Jail would not allow a visit to the ER or a doctor and the nurse (allegedly) was requested but never came to the plaintiff's cell to help him (as intimated).

147. After the plaintiff bailed out on the 12th of June he was exhausted and in pain after being kept up all night in a tinyroom sleeping on a cold floor with up to 30 other detainees. There was barely standing room and people were laying down in shifts some of the time. As soon as rested, he went to PRMC to get treatment for his injuries which were still causing great pain an demmobilization (post bail).
PRMC provided minimal treatment and denied CAT scans or MRIs for the plaintiffs head injuries. They would not perform X-rays on his neck or shoulder. They minimally logged the event because PRMC was liable for having Jesse arrrest the plaintiff and while he did it following the cease and destroy policy, causing injuries.

148. PRMC reccomended lots of sleep for the head injury and immobilization of the shoulders knees, back, and neck. Being unable to get to another hospital--the closest next hospital is in Fredericksburg-- 30 miles away. Unknowledgable to seek another opinion he followed the misguided advice of the licensed medical personel.

149. Plaintiff's memoryloss, confusion, and seizures(at night) began 4 days after this

49

incident; UTMB (University of Texas Medical) made an effort to discover the cause of the seizures in 2022 when one occured for the first time in his location during the evening. It caused vomitting, dizzyness, body flailing, and as always abraisions, bruising, and biting of the inside of his cheek. They diagnosed it as being caused by the earlier head trauma, this incident.

150. Since the incident the plaintiff has 2 to 3 seizures per wiik while sleeping. Sometimes they happen while he is awake, which generally causes falling and more injury. UTMB reccomends brain surgury to remove the scar tissue to stop the seizures. The The plaintiff takes medicine every day because of seizures and he had no seizures prior to Jesse's assault inside PRMC's ER lobby.

151. The plaintiff's neck has early arthritis and UTMB is recommending a surgery to fuse the vertebrae and this is because of the damage that exacerbated his previous neck condition when Jesse linebackered him into the ER lobby doors with nothing to protect the vulnerable backside of his body.

## CONSPIRACIES TO COMMIT CONSTITUUTIONAL VIOLATIONS

152. After Jesse had placed cuffs onto the plaintiff and some of tyhe pain had subsided, with his body properly suported and able to stand he was still bewildered by what had just transpired. He asked Jesse why he was arrested and Jesse said he could not give any reason and did not know. He also said that he would try to make a reason post-hoc. This was worded that he would try to figure something out.

Then, He told the other officers and bystanders that the plaintiff had come from behind him and pushed him. Later, he told Jessica Adams to put this in her statement and she would comply.

153. Jesse would meet the unknown PRMC nurses and the PRMC staff Defendants in the corner of the ER in an attempt to hide this meeting from the surveillance camera. Each faced opposite the camera and stood in or near the blind spot at the end of the row of chairs near the west wall relatively in close proximity to the camera.

154. He forced the plaintiff into a chair directly in front of the staff and allowed them to ask him some questions, Jesse had asked them to ask. Particularly the nurse who was in charge and performed the majority of the questioning is Nurse Shane but it is still not certain what his occupation is, or his real name, and these will need to be discovered. Jesse told Nurse Shane that he arrested the plaintiff, now he has to come up with a reason to have done so. He asked Nurse Shane what he thought a good reason would be because he can not say that it is the cease and destroy policy. Nurse Shane talked with another Unknown PRMC Staff #2 who said that Davidson had a mental health history when whe was a child and they could say she made threats of sicide today. Nurse Shane told this to Jesse and then the interrogation of the plaintiff began.

155. Nurse Shane asked the plaintiff as he sat in handcuffs, and after he had already verbally invoked his right to remain silent, questions about Davidsons mental health history. He also asked why she had come to the hospital. Davidson was sitting just behind the plaintiff and could hear this whole conversation. The plaintiff told Nurse Shane that he did not want to answer any questions to help them to try to fabricate a reason for assaulting and arresting him and Davidson. He also said they should have thought about why they were chasing before chasing. Earlier,    the plaintiff was unaware that Jesse had been requested to arrest him. The plaintiff made sure to loudly say right away that Davidson was allowed to leave and she was not intent on commiting suicide. She also said this right away and invoked her right to remain silent after  that.

156. Jesse was visibly put off by the lack of cooperation by the plaintiff and threatened to add a charge of obstruction an investigation. The plaintiff told Nurse Shane again that He asserts his 5th amendment rights and then said "if I do cooperate at this point any statements I make will not be worth the paper that they are printed on  because I am under duress'" The plaintiff explained that he is cuffed, there was no reason for the arrest, he had been assaulted and injured, and now there is a third party doing a custodial interrogation over "my fifth amendment right to remain silent." Then he

told Jesse that this is the definition of under dress . Then the plaintiff said Davidson
didn't make any suicidal statements again and that if they want to know if she had
permission to leave all they have to do is rewind the video on his phone(the plaintiff
thought the phone was in his car). Then they will see that her nurse, Unknown PRMC
Nurse #1, gave her permission to leave.

157. Jesse talked to Nurse Shane and told him that he would say that Davidon was told not
to leave  because of suicidal staements. Nurse Shane said that he did not want Jesse
using any of the staff there unless they want to be used for his narrative. Jesse said
he would not use them without their permission but if he does not use them then they
cannot then go and give any statements that will go across the suicidal statement narrative
or the whole thing will fall apart. He said that they could not give any evidence that
says that the chase or arrest was for any other purpose. Shane accepted the stipulaition
and told Jesse that he had to make sure that his coworkers, all of the PRMC defendants
working in the ER that day would agree to them.

158. Nurse Shane went to talk to the other PRMC Staff to discuss the stipulations and to
see if they were intent on giving statements. The PRMC Staff included all of the PRMC
staff defendants. Including ...........,  ............................................,
Unknown FRMC Staff , and Unknown PRMC Nurse #1. He asked each if they would give a statement
to the Kerrville Police fabricating that Davidson had made suicidal statements earlier.
Everyone of them said no, or denied the request, and they each gave reasonings that
indicated that doing so would be dishonest and that they were not going to lie against
Pamela Davidson. Then Nurse Shane asked each of them if they were intent on giving
any statements at all. He told them that should not. And, if they do not, he will
make sure that Jesse will protect them by keeping their names off of the records and
the whole ordeal quiet. Then, they will not have to lie but PRMC's goals of having
the plaintiff arrested can still move forward and everyone will be protected from
liability.

159. Nurse Shane told each PRMC Staff and PRMC Nurse that they can not give any evidence

that will suggest anything different then that she gave suicidal statements earlier.
By this time each PRMC defendants knew that the reason for the chase was the cease
and destroy hospital policy because they had each discussed it with eachother and
with nurse Shane. So, each agreed to prevent liavility and to protecty their employment
interests over protecting the plaintiff.

160. Each PRMC defendant had exculpable evidence and could verify the cease and destroy
policy and its creators. Several PRMC staff including Davidson''s doctor and her
nurse knew thaty Davidson did not make any suicidal statements that day, to staff
or others.

161. Defendant Nurse Shane met with Jesse again and told him that the staff he talked to
will comply with his stipulations about giving adverse statements but each wanted
to make absolutely sure that under no circumstances will their name be used or will
they be mentioned as involved in the incident. Jesse complied with the stipulations
and used the suicidasl statements earlier (overheard from an anonymous staffer being
told to another anonymous staffer) to protect the identities and prevent the defense
from interviewing any specific defendant's.

162. The ''unidentified staff'' assertions are the only mention Jesse has prechase to present
any reasonable suspicion to chase Davidson and he does it in a way that is completely
unverifiable(purposefully and maliciously).

163. Through at least two rounds of discovery by Ferguson and Eismann (the plaintiff's
indigent counsel or publc defenders) no names of any staff have been produced by police
or the prosecutor's office since the incident in 2016. Any statements or names that
suddely will appear as a result of this suit are fabricated and false lies made only
for the purpose to try to excuse defendants of their lawful liability to make wrong
the rights on that terrible day.(if these statements and names now cooroborate Jesse's
fabrications, ommissions,and lies).

164. Jesse only mentioned Jessica Adams and Elizabeth Smith who were not proximal to the
events that ggave rise to the chase. Instead, they were staff who were located in the
lobby itself.  Even though in Texas probalbe cause is a burden for the prosecution

becasue reasonable suspicion to chase Davidson(the lawful duty that Jesse purports
to be carrying out)is an element of Interfere with public duties of a police oficer,
this predicate in the fabrication and ommisions wasn't cocroborated. However, both
gave statements about what was coached to have happened in the lobby.

165.  Jesse assured Nurse Shane that this whole ordeal would bequiet and told him to inform
the other coconspirators of that fact. Jesse told Keller, Austin Beal, J.Gonzalez
to manufacture evidence and to leave the ER staff and nurses off of all of their reports.
He said don not get statements except from Jessica Adams and Elizabeth Smith. They
each complied but J. gonzalez would accidentally write a few statements in his report
(supplemental) that conflicted with Jesse's versions of events. By this time jesse
had explained, to each, that the story will be that the plaintiff showed up to take
a suicidal Davidson home and that he gave chase because she was heard making suicidal
statements to staff. J. Gonzalez suppliment report conflicted with Kellers Jesse's,
and Beal's statements, reports, and probable cause affidavits so Allison Baker hid
it from the Kerr County Attorney(initially) and the plaintiff.

166.  Jesse contacted Buster as discussed supra. Buster contacted Allison Baker and she
agreed to protect Jesse's illegal use of force and cover up anything that goes
against the narrative that Jesse created about suicidal statements. She also agreed
to not make any mention to the County Attorney magistrate or plaintiff about Jesses
excessive force or the initial arrest (before Jesse's proposed collision) as the
plaintiff stood in front of him). She completed these objectives.

167.  After the false convictions discussed supra the plaintiff, who had not heard from
hjs attorney in 2017, since 12/21/2016, filed a FOIA request to the Kerrville Police
Department to get ALL police reports, information, witness statements and other
written records subsequent June 10, 2016 referencing to June 11, 2016 pertaining
to Jesse. This included police reports and J. gonzalez and all other officers reports
and statements.

168.  A copy of the dispatch log was requested and any records indicating FRMC requested
any assistance between 1:00 am and 11:59 pm June 11, 2016 or routine stops that

had happened around the PRMC hospital on June 11, 2016. He requested all records reffering to Hune 11, 2016 filed after June 10, 2016. and 1 hours afte

He requested the names of all of the officers present 2 hours prior to the detainment of Russell Adams and 2 hours after the prtrayed subsequent arrest(as reported) at PRMC.

He requested the name of the officer who made contact after Jesse.

169. This was stamped as recieved by Allison Baker July 28, 2017. In respondonding, she had ignored the plaintiff's invocation of Federal Jurisdiction over the matter and gave a State law exception of §§552.023 indicating only the (conspiratorial counsel) could request this information based only on the incarceration of th eplaintiff. Counsel had not replied or contacted the plaintiff for several months despite his repeated requests for him  to push discovery for the names of the staff and the exposed lies in Jesse's reports and affidavits.

170. The plaintiff's FOIA request states this authority: "This request is made under the Freedom of Informat ion act (FOIA) 5 USC §552; [and the Privacy Act 5 USC § 5529]; more as, Tex. Gov't Code Ann. §§552.029" It is important to note that even under the state law the records are not forbidden and she used her discretion: when the requestor is represented by counsel (which he was not) the records can be denied. This was a pro se request for exculpable evidence and Brady material because counsel would not make this request himself and would not respond to the plaintiffs letters.

171. Allison Baker had personal knowledge of the records that werw being withheld because she was the person witholding them. She also knew the evidence she was concealing on behalf of Jesse and his father would have aided in the defense and put liavility on Kerrville police Officers. She used this as another chance to use her position as records supervisor, under color of law, to protect Jesse and conceal the truth. Allison Baker whited out J. Gonzalez record reference to hisd supplement  in her packet before she forwarded it to the County Attorney for processing of charges and she did htis to charge and make charges more serious. She did not realize Jesse and Buster wanted her to whiteout over Jesse's reference to the supplement report in his incident report as well, when she was asked to delete the report itself if

55

this happend on the 21st of June at around 16:04.

172. This report would have brought a critical link to the first amendment violations, Jesse's initiation of conspiracy, and other violations. She also concealed his audio and video which would have also brought evidence of agreements, destruction of the video, confessions of the illegal arrest of the plaintiff, and an interrogation in the back of j. Gonzalez car after Jesse put him there to try to construct a reason for the chase and sugsequent arrests (post-hoc). She did this maliciously and intentionally to get the plaintiff charged.

173. Ferguson did not communicate with the plaintiff but after the plaintiff moved the district court to have him removed and substituted Ferguson contacted the plaintiff and withdrew (officiallyyfor the conflict of intersest). Because, of the conflict of interest between Buster and Jesse 6 different attorneys from the public defenders office withdrawing from the plaintiff's case one after the other. These withdrawals happeened until Weston Eismann was appointed because he told the plaintiff that he had no knowledge of Buster or Jesse Baldwin and didn't care about anyone but the plaintiff. His factual proof wqas that he had just graduated law school and had no prior history in Kerr County.

174. Weston Eismann was the plaintiff's final attorney and he tried to get the full client file from Ferguson, initially, by request. This is the accepted way of getting a client file from previous counsel. But, after Ferguson refused to give up the entire client file and used his reasoning that the storage where the file is located is cold Eismann did not represent his client and push for the client file. He notified the plaintiff by letter that ferguson would not turn over the client file but did not confront him, motion the court, or take any other means to get it.

175. Eismann, after representation and pre USC§1983, was requested to turn over his own client file and followed Ferguson in suit acting under the direction of JD Dowdy. He refused and the plaintiff pursued all of the state administrative remedies which could produce the client file. The plaintiff opened and actively pursued the file through CAAP(the Sate Bar Client Attorney Assistance Program).

176. Ferguson had told JD to contact Weston Eismann to request that he terminate his attemps to get the file because ferguson had told Buster that he would not help the plaintiff pursue his defense and would not give him any evidence that goes against Jesse's made up narrative of suicidal statements earlier. She did ontact Eisman and did tell him to submit. Eismann Submitted.

177. After he submitted to JD he informed the plaintiff that if he wanted the attorney client file from ferguson he will not get it or work anylonger on getting it. Then, he told the plainitiff that he would have to pursue action on his own to get the file.

178. The plaintiff did this by enlisting CAAP who was previously unable to get the file in the misdemeanor cases. Then he pursued the mandamus applications spoke of at pt 184. Non of these were successful. The Fourth circuit court of Appeals opinion opined that any motion that the plaintiff files, regardless if it is to get a client file or not is considered a hybrid motion. Therefore it could not order mandamus to rule upon that motion because Texas law does not guarantee the right to hybrid cousel. Essentially, without prior remedy of a motion there is no jurisdiction for Mandamus relief, but, if the motion(even a proper motion such as the plaintiff's) is hybrid mandamus can't issue. There is notremedy in the State of Texas for a represented defendant to get his client file from a former attorney when his current attorny, without seeing the file or knowing its contents, declines to get it. Therefore this denial by Eismann and Ferguson is a 14th amendment violation of substantive and procedural due process preventing fair trial and access to the courts.

179. Weston Eismann also withheld the dismissal of CR16-0666 and CR16-0667 by not contacting the plaintiff when it happened and not sending notice until July of 2023. Because of Fergusons and Eismans actions the plaintiff was not able to ascertain the entire contents of ferguson's file which contained critical evidence of conspiracy, fabrication, and both of these files were needed to improve this complaint and file claimes against other defendants which are protected from liavility becayse of their actions.

180. This complaint was delayed for 7 months and it was only after another follow up asking for him to get Ferguson's client file that prompted him to contact his coconspirator (JD) to tell her that they must now send notice because the plaintiff is asking questions. Then, she and Eismans sent both of their December 13,2022 orders dismissing the charges in the middle of July in 2023 within days of eachother.

181. Lack of notice prevented the plaintiff from researching and barred any knowledge of any ability to file a USC §1983. Before dismissing the plaintiff believed that filing a 1983 was impossible. 1) He was told by many different lawyers who represented him that there was no hope for a dismissal. 2) He had filed for a dismissal himself and it was not even ruled upon. 3) The prosecutor never gave any indication since 2016 that it has interest in dismissing the charges or pursuing dismissal. 4) At the time the plaintiff had put in his last motion for dismissal Thompson v Clark had not happened and an favorable termination for malicious prosecution purposes still ment only an over turned sentence or conviction, Neither of which had happened. 5) The plaintiff had no legal experiance nor an attorney. 6) No more discovery had been done such as names of nurses or more video coming to light to put new pressure on the prosecutor to dismiss. All of these show that it was highly unlikely, improbable, and forbidden that a dismissal would happen in either case. The plaintiff was also attentive and expectant that if it would happen that he would get notice right away. Until then he knew that he was eternally Heck barred from filing USC §1983.

182. One key factor in this suit is the discovery of unknown defendants. This is a highly complex case involving theories of liability and immunity with many obstacles. The plaintiff who is still not confident as he would like to be is being forced to file this complaint today instead of at a later time because of the conspiracy between Eisman, add JD. If the plaintiff had the 7 months directly after his favorable termination the complaint would be a better product.

183. Originally Eismann was informative and good counsel, but after talking to JD, she informed him of the amount of law enforcement, and court officials who would obstruct his practice

by not sending notices, putting him at the bottom of lists making payment for his work difficult(in the future). He agreed to block notice with the plaintiff until JD gave him permission to send notice. She did, after he contacted her in July.

184. Judge Emerson recieved a mandamus in the 198th District Court to force Judge Harris to rule on a properly placed motion to compel Brett Ferguson to divulge all of the contents of the client file from when he represented the plaintiff on CR16-666 and CR16-0667. The mandamus was properly filed in his court by the plaintiff by him sending the mandamus petition to the district clerk. The plaintiff also filed a mandamus with the fourth Court of Appeals of Texas, and with the Court of criminals of Texas and attempted to file one with the 216th District Court in Kerr County as well. At the time Texas law gave each of these courts concurrent jurisdiction over a mandamus to force a statutory county court (The Kerr County court at law) Judge to rule on a motion. However, Judge Emerson, personally, in a letter denied that he was served with the mandamus. There is record of the mail service of the petition for mandamus to the 198th district clerk in the TDCJ legal mail database.

185. Judge Emerson personally stepped out of his position as a Judge by destroying and denying that a mandamus petition was before his court by destroying and obstructing process prior to the records being entered and filed in the court. The petitioner recieved this letter some time after his mandamus was placed in the mailbox at his TDCJ Unit, concealing his actions.

186. By destroying the mandamus petition which required being filed under Texas law to give jurisdiction to the district court Rex emerson denied the plaintiff substantive and procedural;due process under the 14 amendment and a fair trial on the misdemeanors CR16-0666 and CR16-0667 in the Kerr County Court at law by denying access to the courts and preventing said charges (which are not within his jurisdiction because they are not connected to felonies or involving charges of corruption).

Rex emerson aided in concealing the contents of fergusons client file.

## FEDERAL THEORIES OF RECOVERY

187. GROUPS OF DEFENDANTS:

group #1: Kerr County, PRMC, Unknown Hospital District Memeber #1 - #4, PRMC Superintendant, Uknown PRMC Staff #1 and , Jesse Baldwin

group #2: group #1, Unknown PRMC Staff #2 - #5, Nurse Shane, Elizabeth Smith, Jessica Adams, Austin Beal, Kris Keller, J. Gonzalez, Evin Anderson, Buster Baldwin, Allison Baker, Kerrville Police Chief

group #3: All Defendants

group #4: Anita Van Klaveren, Nuvia Cruces, Shelley Parker, Ana Keller, Holly Mouser, Terry Raney, Brian Duby, Diane Rodriguez, Rolando Valdez, Rhiana, Solis, Janice Smith,

188 DISTINCT SEIZURES:

Seizure #1: The omitted arrest at 85,86, 127

Seizure #2: The first contact portrayed by Jesse, and where he alleged that the plaintiff was negligent in following his order comitting Tex. Pen. Code 33.15, agains his person. 87, 128

Seizure #3: Jesse alleged that he initiated 38.03 because the plaintiff moved his hands to the fron of his body once. 142, 143

Seizure #4: CR16-0666 process complaint and information filed for Seizure #2 July 19, 2016 at 32

Seizure #5: CR16-0667 process complaint and information filed for Seizure #3 July 19, 2016 at 32

Seizure #6: The plaintiff was confined June 11th and 12th in 2016, from 6/21/2016 - 7/21/2016, and from 9/27/2016 until 12/13/2022 for CR16-0666 32

Seizure #7: The plaintiff was confined June 11th and 12th in 2016, from 6/21/2016 - 7/21/2016, and from 9/27/2016 until 12/13/2022 for CR16-0667 32

Seizure #8: On 12/15/2016 a false conviction was entered by Jackline Dowdy

for CR16-0666 at 38

Seizure #9: On 12/15/2016 a false conviction was entered by Jackline Dowdy

for CR16-0667 at 38

189.  GROUPS OF SEIZURES:

group A:  Seizures #1 #2 #3

group B:  Seizures  #4 - #7

group C:  Seizures  #8 and #9

190.  Points 1- 189 are incorporated by reference.

191.  The actions and omission described above, engaged in under color of law of State authority by the defendants(including Kerr County, Kerr County Hospital District, PRMC )sued as persons and responsible because of their authorization, condonation, ratification of acts by their agents;and including Kerr County Commissioner, Judge Harris, Rebecca Bolin, Heather Stebbins, Unknown PRMC Nurse #1, Allison Baker, Unknown Hospital Board members #1 - #4, PRMC Superintendant, Kerrville Police Chief, sued as persons for failure to act, failure to train, failure to supervise, and/or by and through res ipsa loquitur were responsible for acts and omissions by subordinates) deprived the plaintiff of rights secured to him by the Constitution of the United States, including but not limited tothe plaintiff's:

192.  First Amendment Right:

a. to freedom of expression( including filming in public and posting of videos online)  by Defendant group #1 including conspiracies jointly

b. to be free from retaliation for excercizing a first amendment right (including videoing in public, making news posts, and public posts) by Defendants group #1 including conspiracies jointly

c. to be free to video in public (including to post subsequent videos after filming) by Defendant group #1

d. to be free from destruction of First amendment protected content (including video content and future posts made with that content)

61

by Defendant group #1 including conspiracies jointly

193. Fourth Amendment Right:

    a. to be free from illegal seizure of person and property( including from Seizures #1 - #9, and video content) by Defendant group #3 including conspiracies jointly

    b. to be free from illegal arrest(including Seizures #1 - #9) by Defendant group #3 including conspiracies jointly

    c. to be free from excessive force( including Seizures #1 - #3, spit in manuever, and linebackering) by Defendant group #1 including conspiracies jointly

    d. to be free from false imprisonment( including Seizures #1 - #9) by Defendant group #3 including conspiracies jointly

    e. to be free from  illegal detention( including Seizures #1 - #3) by Defendant group #2 including conspiracies jointly

    f. to be free from process or arrest based on fabricated and/or omitted evidence (including Seizures #1 - #9 with incident/arrest/police reports, probable cause afficavitts, and witness statements; and omissions within and without; also the fabricated judicial confession evidence (plea instruments)) by Defendant group #3 including including conspiracies jointly

    g.to be free from malicious prosecution (including Seizures #2 - #9) by Defendant group #3 including conspiracies jointly

    h. to be free from conspiracy to deprive of a Fourth amendment right by Defendant group #3 including conspiracies jointly of any amount of any defendants from group #3 up to the amount of Defendants in the group.

    i. to be free from failure to intervene (including fraudulent records, orders, judgments,,excessive force, fabrication of evidence, omitting evidence, and Seizure group #1 - #9, and/or other constitutional rights witnessed by a defendant where no effort was made to halt the offense) by Defendant group

#3 including conspiracies jointly

f. to be free from retaliation for exercising Fourth amendment rights( including the right to walk unmolested in a public place) by Defendant group #2 including conspiracies jointly

194. Fourteenth Amendment Right:

a. to substantive and procedural due process before

1. Seizure of property( including fines, fees, court costs, and attorney fees for Seizure group #2 -#9: plaintiff:s cell phone video content destruction: all of the omitted notices, orders, and removal of records which were false and material) by Defendat group #3,iJudge Emerson, and Scott Monroe including conspiracies jointly.

2. seizure of person( including Seizure group #1 - #9) by Defendant group #3 including conspiracies jointly

3. punishment(including Seizure #1 - #9, fines, fees, court costs,and attorney fees, time served, jail time, excessive force, public slander/libel (including by false conviction)) by Defendant group #3, Scott Monroe, and Rex Emerson including conspiracies jointly.

4. process(of arrest( including Seizures #1 - #9) by Defendant group #3 including conspiracies jointly

5. arrest( including Seizures #1 - #3) by defendants group #2 including conspiracies jointly

b. acess to the courts(including fair trial; notice of orders, judgments; illegally entered convictions; concealing of witness names, video, etc.) by Defendants group #3 including conspiracies jointly

c. right to be free of conspiracy of silence to prevent access to the courts(inclu the filer of the convictions, and all notice given intentionally and maliciously incorrectly or not given maliciously and intentionally, notice of attorney

fees, and post-conviction deadlines)  by Defendants #3 including conspiracies

jointly

d. to be free from excessive force( including Seizure #1 - #3, the running

pit manuever, and the linebackering by Jesse baldwin) by Defendants #1 including

conspiracies jointly

e. to be free from process or arrest by fabricated and/or omitted evidence

(including Seizures #1 - #9; with incident/arrest/police reports, probable

cause affidavitts, witness Statetemts, and omissions within and without all

of the foregoing instruments;but also the fabricated judicial confessions

presented to the court) by Defendant group #3 including conspiracies jointly

### RELIEF REQUESTED

195.  Points 1 - 195. Adminstrative Remedy, and Jury Trial are incorporated by reference.

196. WHEREFORE. plaintiff requests that the court grant this following relief.

A. A declaratory judgement stating that:

1. Jesse Baldwin used excessive force in carrying out his intentional running

pit manuever and in linebackering the plaintiff violating his 1st. 4th. and

14th amendment rights.

2. Jesse Baldwin, Kris Keller, J.Gonzalez, Evin Anderson,and Unknown BRMCI Staff

#3 acted in concert to destroy the plaintiff's evidence and First amendment

protected content violating his 1st, 4th, and 14th amendment rights.

3. Judge Susan Harris violated the plaintiff's procedural and substantive due

process rights by ordering attorney fees and by failing to dismiss fines she

knew  were the product of dismissed and illegal convictions despite the motioning

of the plaintiff to her court and this violated the plaintiff's 14th amendment

right.

4. Judge Rex Emerson violated the plaintiff's procedural and substantive due

process rights by destroying a mandamus petittion that was sent to his court

and in doing that failed to rule on the original proceding violating the plaintiff'

14th amendment rights.

5. Scott Monroe witheld exculpable evidence that he had that would have proved Jesse Baldwin used excessive force, lied in police/incident/arrest reports and probable cause affidavits, and that the plaintiff acted reasonably to protect himself from Jesse's violations of procedure and law to protect himself from further injury. This violated the plaintiff's 14th amendment rights of access to the courts, fair trial, and access to Brady material.

B. Issue an injunction ordering Judge Susan Harris to eliminate all fines, fees, court costs, attorney fees, and any evidence of a conviction or negative consequences for findings for both CR16-0666 and CR16-0667.

C. Issue an injunction ordering Scott Monroe to turn over his prosecutor file contents and all withheld evidence including Jesse Baldwin's testimony, case notes, all video and audio content, and all testimony obtained for witnesses such as Lynn Bond.

D. Issue injunction ordering Brett Ferguson and Weston Eismann to turn over the client files. Which are the plaintiff's property, for both cases CR16-0666 and CR16-0667.

E. Issue an injunction ordering Judge Rex Emerson:

1. to issue a declaration that the plaintiff's destroyed mandamus petition was dismissed without prejudice.

2. to order Judge Rex Emerson to accept and file all future filings by the plaintiff including a new copy of the mandamus petition despite his own conflicts of interest. or bias toward the plaintiff.

6. Award medical expenses including future medical and drug costs for responsible parties. This is for physical, emotional, and deprivation resulting from the excessive force instances

7. Award compensatory damages for responsible parties including:

1. Physical

2. Liberty restraint

3. emotional

4. pain and suffering

5. deprivation of rights

8. Award punitive damages

9. grant other such relief as the court may decide the plaintiff is entitled.

10. general relief; Jury trial;

Respectfully submitted, ... this 1st day of October 2024.

_____

Russell Scott Adams "Pro Se"
TDCJ# 2096368
3201 FM 929
Gatesville, TX 76597

## VERIFICATION

My name is Russell Scott Adams. I am at the Alfred D. Hughe Unit in Gatesville Texas, Corvell County, I am of sound mind and over the age of 18 and freely make the following statement and verification.

I declare under penalty of perjury and verify that the foregoing complaint in its entirety including all assertions of facts and their resulting claims and damages are true and correct to the best of my knowledge and belief.

Executed this 1st day of October 2024. by Declarant

## DECLARATION OF EVIDENCE VERIFICATION

### OF RUSSELL SCOTT ADAMS

I am of sound mind and over the age of 18 and declare the following pursuant to §1746 28 U.S.C.under penalty of perjury.

1. All of the items in the appendix are true and correct or are exact duplicate copies of true and correct records.under my personal knowledge.

2. The Appendix attached to the plaintiff's original complaint contains the following.

a. 07/21/2016 Kerrville Police Department Arrest Report for #A161089

b. 10/17/2016 Criminal Records Search Results on courts.co.kerr.tx.us for the plaintiff

c. 12/19/2016 CR16-0666 courts.co.kerr.tx.us Case Summary showing False conviction/fee/TRN

d. 09/06/2017 CR16-0667 courts.co.kerr.tx.us Case Summary showing False conviction/fees/fines/and the 01/03/2017 post-conviction hearing

e. 12/20/2016 letter from Defendant's appointed attorney which concealed the fact that the defendant was already convicted on 12/15/2016

f. 11/13/2019 CR16-0666 courts.co.kerr.tx.us page 1 showing various illegal records: un-notified records; and changes; post-conviction hearing for Fergusons fees.(This is the Register of Actions.)

g. page (2) of (f) shows various illegal records; un-notified records; and that fees were applied 12/15/2016 as the conviction was entered. Additionally it shows that post conviction attorney fees were applied on 01/03/2017 by Judge Harris.

h. 11/23/2019 CR16-0667 courts.co.kerr.tx.us page 1 showing various illegal records; un-notified records; and changes; post-conviction hearing for Ferguson's fees

i. page (2) of (h) showing various illegal records; un-notified records; and changes; and Jackline Dowdy's entry of the 12/19/2016 fines she forgot on enteringg the false conviction of 12/15/2016

12/13/2022 Motion to Dismiss CR16-0666

12/13/2022 Motion to Dismiss CR160667

I am an inmate at the Alfred D. Hughes unit in Gatesville Texas in Coryell County.
This declaration was made and signed in Coryell County on 05    October  in 2024
the year of 2024 by the declarant

Submitted by,

Russell Adams 02096368
3201 FM 929
Gatesville, TX 76597

# KERRVILLE POLICE DEPARTMENT

## Arrest Report

Arrest # A161089



### ARRESTEE DETAILS

| | | | | | |
|---|---|---|---|---|---|
| Name | RUSSELL SCOTT ADAMS | | | | |
| Address | 101 KERRVILLA RD, KERRVILLE TEXAS 78028 | | | | |
| Phone | 830-928-5807 | SSN | __-__-____ | DL | ******** |
| Race | W | Sex | M   Age   37 | DOB | 04/01/1979 |
| Height | 5'10" | Weight | 180 | Hair | BRO |
| Eyes | BRO | JRN | | SID | 08325482 |
| FBI | | MID | | | |
| Resident | Y | Inc.# | 1601894 | | |
| Place of Birth | TX | | | | |

### ARREST INFORMATION

| | | | |
|---|---|---|---|
| Arrest Date-Time | 6/12/2016 - 18:04 | Hold Reason | WARRANTLESS/ON VIEW |
| Arrest Location | 551 HILL COUNTRY DR S  KERRVILLE TX 78028 | | |
| Arrest Agency | KERRVILLE POLICE | Release To | |
| Arrest Type | ON VIEW | Resist Arrest | Y    Arrested Before    Y |
| Arrest Disp | COUNTY | Arrest Officer | 330 BALDWIN |
| Supervisor | | Miranda Officer | |
| Arrest Condition | COOPERATIVE | | |
| Armed With | UNARMED | | |

### ARREST CHARGES

| | | | | | |
|---|---|---|---|---|---|
| Violation | INTERFER W/PUBLIC DUTIES (MB) | | | | |
| Statute | 38.15(b) | | | | |
| Judgement | | | | | |
| Judge | | Court | | | |
| Disp Date | 06/11/2016 | Court Date | | Bond Amt | $.00 |
| Warrant # | | Citation # | | Incident # | 1601894 |
| Disposition | COUNTY | Bond Type | | | |

| | | | | | |
|---|---|---|---|---|---|
| Violation | RESIST ARREST SEARCH OR TRANSPORT (MA) | | | | |
| Statute | 38.03(a) | | | | |
| Judgement | | | | | |
| Judge | | Court | | | |
| Disp Date | 06/11/2016 | Court Date | | Bond Amt | $.00 |
| Warrant # | | Citation # | | Incident # | 1601894 |
| Disposition | COUNTY | Bond Type | | | |

# Criminal Records Search Results

Skip to Main Content  Logout  My Account  Search Menu  New Criminal Search  Refine Search    Location : All Courts  Help

**Record Count:  7**
**Search By:** Defendant  **Party Search Mode:** Name  **Last Name:** Adams  **First Name:** Russell  **Middle Name:** Scott  **Sort By:** Filed Date

| Case Number | Citation Number | Defendant Info | Filed/Location | Type/Status | Charge(s) |
|---|---|---|---|---|---|
| CR031439 | | Adams, Russell Scot | 09/10/2003 | Adult Misdemeanor Dismissed | THEFT >=$20<$500 BY CHECK |
| B1475 | | Adams, Russell Scot | 03/16/2009 | Adult Felony Disposed |  |
| B1476 | | Adams, Russell Scot | 03/16/2009 | Adult Felony Disposed | |
| 15-0529 | 041078 | Adams, Russell Scot | 12/30/2015 | Traffic - Adult Dismissed | DRIVING WHILE LICENSE INVAL |
| 16-0157 | 040916 | Adams, Russell Scot | 04/13/2016 | Traffic - Adult Dismissed | DRIVING WHILE LICENSE INVAL |
| CR160666 | | Adams, Russell Scot | 07/19/2016 | Adult Misdemeanor Filed | INTERFER W/PUBLIC DUTIES |
| CR160667 | | Adams, Russell Scot | 07/19/2016 | Adult Misdemeanor Filed | RESIST ARREST SEARCH OR TI |

*Ret →*

*Ret →*

*12/13/22*

*12/13/22*

*5 dismissals*



# Brett L. Ferguson

## & Associates

ATTORNEYS AND COUNSELORS AT LAW
327 EARL GARRETT STE 104 * KERRVILLE, TEXAS 78028
PHONE: (830) 895-2544 * FAX: (830) 895-3353
Brett L. Ferguson - bferg@ktc.com
TX Bar # 24040889

December 20, 2016

RUSSELL SCOTT ADAMS          INMATE #02096368
Garza West Unit
4250 Hwy 202
Beeville, TX 78102

RE:    RE:    State v. Russell Scott Adams.; Interfere w/Public Duties; Cause No: CR16-0666
& Resisting Arrest or Transport; Cause No: CR16-0667 in the County Court at Law of Kerr
County, Texas.

Mr. Adams,

    Please find enclosed the Plea in Absentia I have received from the County Attorney
regarding your misdemeanor cases. I know you had informed me that you want a jury trial on
these matters, however, I am required to forward this information and offer from the county
attorney's office to you for your consideration.

    If you choose to accept the offer please follow the instructions given by the letter from
the Kerr County Attorney and return it to my office so that I can forward it to the county
attorney. However, please be aware of potential negative ramifications that a judicial confession
could have on your felony revocation cases should you win your appeal. If you plead guilty to
these charges it might be used as a confession in your revocation cases. I recommend that we
wait until your appeals have been resolved to make any decisions on this matter.

    Please let me know your decision so that I can inform the county attorney's office.

    You may contact me by phone, fax or mail if you have any concerns or questions. Thank
you for your time and consideration in this matter.

                                        Respectfully,

                                        Brett L. Ferguson
                                        Attorney at Law

COUNTY COURT AT LAW
# CASE SUMMARY
### CASE NO. CR160666

| 12/13/2016 | ⚄ *CANCELED* Review Hearing (9:00 AM) (Judicial Officer: Harris, Susan) |
|---|---|
| | *Continued* |
| 12/15/2016 | Disposition (Judicial Officer: Harris, Susan) |
| | 1. INTERFER W/PUBLIC DUTIES |
| | Convicted |
| | TRN: 9217158941   TRS: A001 |

| DATE | FINANCIAL INFORMATION | |
|---|---|---|
| | **Defendant** Adams, Russell Scott | |
| | Total Charges | 287.00 |
| | Total Payments and Credits | 0.00 |
| | **Balance Due as of 12/19/2016** | **287.00** |
| | **Defendant** Adams, Russell Scott | |
| | Bail Bond Fee Balance as of 12/19/2016 | 0.00 |
| | **Defendant** Adams, Russell Scott | |
| | Bail Bond Fee Balance as of 12/19/2016 | 0.00 |

*Printed on 12/19/2016 at 8:53 AM*

COUNTY COURT AT LAW
# CASE SUMMARY
## CASE NO. CR160667

| 11/14/2016 | Notice Of Release From Jail |
|---|---|
| 12/13/2016 | *CANCELED* **Review Hearing** (9:00 AM) (Judicial Officer: Harris, Susan)<br>*Continued* |
| 12/15/2016 | **Disposition** (Judicial Officer: Harris, Susan)<br>1. RESIST ARREST SEARCH OR TRANSPORT<br>   Convicted<br>     TRN: 9217158941  TRS: A002 |
| 01/03/2017 | Attorney Time Sheet |
| 03/28/2017 | **Review Hearing** (1:30 PM) (Judicial Officer: Harris, Susan) |
| 07/25/2017 | **Review Hearing** (1:30 PM) (Judicial Officer: Harris, Susan) |
| 01/23/2018 | **Review Hearing** (9:00 AM) (Judicial Officer: Harris, Susan) |

| DATE | FINANCIAL INFORMATION | |
|---|---|---|
| | **Defendant** Adams, Russell Scott<br>Total Charges<br>Total Payments and Credits<br>**Balance Due as of 9/6/2017** | 787.00<br>0.00<br>787.00 |
| | **Defendant** Adams, Russell Scott<br>Bail Bond Fee Balance as of 9/6/2017 | **0.00** |
| | **Defendant** Adams, Russell Scott<br>Bail Bond Fee Balance as of 9/6/2017 | **0.00** |



*Printed on 09/06/201*

11/23/2019

courts.co.kerr.tx.us/CaseManagement/PublicAccess/CaseDetail.aspx?CaseID=4284445

Skip to Main Content Logout My Account Search Menu New Criminal Search Refine Search Back                Location : All Courts    Images Help

# REGISTER OF ACTIONS
## CASE NO. CR160666

| | | | |
|---|---|---|---|
| The State of Texas vs. Russell Scott Adams | § § § § § § | Case Type: | **Adult Misdemeanor** |
| | | Date Filed: | 07/19/2016 |
| | | Location: | |

---

### PARTY INFORMATION

Attorneys

Court Reporter Rode, Kelly
    Court Reporter for Kerr County Court At LAw
    700 Main St., Ste. 123
    Kerrville, TX 78028

---

| Defendant | **Adams, Russell Scott**<br>TDCJ Alfred Hughes Unit<br>3201 FM 929<br>Gatesville, TX 76597 | Male White<br>5' 10", 180 lbs | |
|---|---|---|---|
| State | The State of Texas | Other | Heather Stebbins<br>830-792-2220(W)<br>830-792-2228(F)<br>hstebbins@co.kerr.tx.us |

---

### CHARGE INFORMATION

| Charges: Adams, Russell Scott | Statute | Level | Date |
|---|---|---|---|
| 1.  INTERFER W/PUBLIC DUTIES | 38.15(a) | Class B Misdemeanor | 06/11/2016 |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 06/21/2016 | Affidavit Of Surety To Discharge Liability By Surrender Or I |
| 06/29/2016 | Order Appointing Counsel |
| | *Ferguson* |
| 07/12/2016 | Request for Discovery |
| 07/19/2016 | Complaint & Information Filed |
| 07/26/2016 | Certificate of Written Discovery |
| 09/27/2016 | Affidavit Of Surety To Discharge Liability By Surrender Or I |
| 10/04/2016 | Arraignment  (9:00 AM) (Judicial Officer Harris, Susan) ← *Never took place* |
| 10/11/2016 | Jail Docket  (9:30 AM) (Judicial Officer Harris, Susan) |
| | Result: Reset |
| 11/14/2016 | Notice Of Release From Jail |
| 12/13/2016 | CANCELED   Review Hearing  (9:00 AM) (Judicial Officer Harris, Susan) |
| | *Continued* ← *Harris ruled a post-conviction fees for Ferguson.* |
| 01/02/2017 | Attorney Time Sheet |
| 03/28/2017 | Review Hearing  (1:30 PM) (Judicial Officer Harris, Susan) |
| | Result: Continued |
| 07/25/2017 | Review Hearing  (1:30 PM) (Judicial Officer Harris, Susan) |
| | Result: Continued |
| 07/26/2017 | Letter |
| | *From Defendant* |
| 09/06/2017 | Letter |
| | *From Clerk's Office mailed 9/6/2017* |
| 01/25/2018 | Review Hearing  (9:00 AM) (Judicial Officer Harris, Susan) |
| | *Per Email Sent from CA's Office; sent on 01/24/2018* |
| | Result: Continued |
| 03/12/2018 | Returned by USPS |
| | *USPS needs TDC#/Unable to forward.* |
| 07/30/2018 | Review Hearing  (9:00 AM) (Judicial Officer Harris, Susan) |
| 08/02/2018 | Letter |
| | *From CA Office to Defense Atty - PIA* |
| 08/13/2018 | Letter |
| | *From Defendant* |
| 10/09/2018 | Letter |
| | *From Defendant dated 10/4/2018* |
| 06/28/2019 | Letter |
| | *From Defendant Received 6/28/2019 Mailed information requested 7/11/2019* |
| 07/18/2019 | Letter |
| | *From Defendant dated 7/14/2019* |
| 07/19/2019 | Letter |
| | *To County Attorney From Defendant* |
| 07/25/2019 | Letter |

courts.co.kerr.tx.us/CaseManagement/PublicAccess/CaseDetail.aspx?CaseID=4284445

| Date | Entry |
|---|---|
| 11/23/2019 | To District Clerk From Defendant dated 7/14/2019 |
| 07/31/2019 | **Letter**<br>To County Attorney From Defendant |
| 08/14/2019 | **Motion**<br>For Appointment Of Cousel - Defendant's |
| 08/14/2019 | **Letter**<br>From Defendant - Duplicate - dated 8/9/2019 - Motion |
| 08/15/2019 | **Reponse**<br>On Motion For Appointment Of Counsel - Unopposed |
| 08/22/2019 | **Letter**<br>From Defendant dated 8/16/2019 |
| 08/22/2019 | **Letter**<br>To County Clerk from Defendant 8/22/2019 |
| 08/23/2019 | **Letter**<br>From Kerr County Clerk's Office to Defendant dated 8/23/2019 |
| 08/23/2019 | **Letter**<br>To County Clerk From Defendant dated 8/16/19 |
| 08/29/2019 | **Letter**<br>From Defendant dated 8/25/2019 |
| 09/04/2019 | **Letter**<br>To Defense Attorney From Defendant dated 8/25/2019 |
| 09/09/2019 | **Letter**<br>From Defendant dated 8/29/2019 |
| 09/11/2019 | **Letter**<br>Copy To Judge Williams From Defendant |
| 09/23/2019 | **Letter**<br>From Defendant dated 9/17/2019 |
| 09/23/2019 | **Letter**<br>From Defendant To Judge |
| 09/23/2019 | **Letter**<br>from Defendant. |
| 09/30/2019 | **Letter**<br>From Defendant dated 9/27/2019 |
| 10/01/2019 | **Letter**<br>From Defendant dated 9/27/2019 |
| 10/03/2019 | **Motion To Withdraw As Counsel** |
| 10/03/2019 | **Order**<br>to Withdraw as Counsel |
| 10/10/2019 | **Motion**<br>to Disqualify Counsel - Defendant's Response sent to CA 10/24/2019 |
| 10/11/2019 | **Motion**<br>to Disqualify as Counsel - Defendant's Response sent to CA 10/24/2019 |
| 10/15/2019 | **Motion**<br>to Disqualify Counsel -Defendant's Response sent to CA 10/24/2019 |
| 10/15/2019 | **Letter**<br>on Motion to Disqualify Counsel |
| 10/22/2019 | **Response**<br>to Motion to Withdraw as Counsel - Unopposed |
| 10/24/2019 | **Order**<br>on Unopposed Motion to Withdraw as Counsel |
| 10/25/2019 | **Letter**<br>from Judge on Motion to Disqualify Counsel |
| 10/31/2019 | **Letter**<br>from Def. asking for another request. Emailed to County Attorney Office. |
| 11/18/2019 | **Letter**<br>to Ashley Warnix |

## FINANCIAL INFORMATION

Defendant Adams, Russell Scott
Total Financial Assessment                                           1,197.00
Total Payments and Credits                                               0.00
Balance Due as of 11/23/2019                                         1,197.00

| Date | Entry | Amount |
|---|---|---|
| 07/25/2016 | Transaction Assessment | 10.00 |
| 07/29/2016 | Transaction Assessment | 10.00 |
| 07/29/2016 | Transaction Assessment | 10.00 |
| 07/29/2016 | Transaction Assessment | 5.00 |
| 12/15/2016 | Transaction Assessment | 252.00 |
| 01/03/2017 | Transaction Assessment | 910.00 |

*Fines and Conviction still public record as of 11/23/2019*

11/23/2019                    courts.co.kerr.tx.us/CaseManagement/PublicAccess/CaseDetail.aspx?CaseID=4284446

Skip to Main Content Logon My Account Search Menu New Criminal Search Refine Search Back          Location : All Courts    Images Help

# REGISTER OF ACTIONS
## CASE NO. CR160667

| The State of Texas vs. Russell Scott Adams | § § § § § § | | Case Type: | **Adult Misdemeanor** |
|---|---|---|---|---|
| | | | Date Filed: | 07/19/2016 |
| | | | Location: | |

PARTY INFORMATION

|  |  | **Attorneys** |
|---|---|---|
| Court ReporterRode, Kelly | | |
| Court Reporter for Kerr County Court At LAw | | |
| 700 Main St., Ste. 123 | | |
| Kerrville, TX 78028 | | |

| **Defendant** | **Adams, Russell Scott** | Male White | |
|---|---|---|---|
| | TDCJ Alfred Hughes Unit | 5' 10", 180 lbs | |
| | 3201 FM 929 | | |
| | Gatesville, TX 76597 | | |

| **State** | The State of Texas | Other | **Heather Stebbins** |
|---|---|---|---|
| | | | 830-792-2220(W) |
| | | | 830-792-2228(F) |
| | | | hstebbins@co.kerr.tx.us |

CHARGE INFORMATION

| Charges: Adams, Russell Scott | Statute | Level | Date |
|---|---|---|---|
| 1.  RESIST ARREST SEARCH OR TRANSPORT | 38.03(a) | Class A Misdemeanor | 06/11/2016 |

EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 06/21/2016 | Affidavit Of Surety To Discharge Liability By Surrender Or I |
| 05/29/2016 | Order Appointing Counsel |
| | *Fergsuon* |
| 07/12/2016 | Request for Discovery |
| 07/19/2016 | Complaint & Information Filed |
| 07/26/2016 | Certificate of Written Discovery |
| 09/27/2016 | Affidavit Of Surety To Discharge Liability By Surrender Or I *← false recd.* |
| 10/04/2016 | Arraignment  (9:00 AM) (Judicial Officer Harris, Susan) |
| 10/11/2016 | Jail Docket  (9:30 AM) (Judicial Officer Harris, Susan) |
| | Result: Reset |
| 11/14/2016 | Notice Of Release From Jail |
| 12/13/2016 | CANCELED  Review Hearing  (9:00 AM) (Judicial Officer Harris, Susan) |
| | *Continued* |
| 01/03/2017 | Attorney Time Sheet  *← Harris ruled on post-conviction fees for Ferguson.* |
| 03/28/2017 | Review Hearing  (1:30 PM) (Judicial Officer Harris, Susan) |
| | Result: Continued |
| 07/25/2017 | Review Hearing  (1:30 PM) (Judicial Officer Harris, Susan) |
| | Result: Reset |
| 07/26/2017 | Letter |
| | *From Defendant* |
| 09/06/2017 | Letter |
| | *From County Clerk's Office mailed 9/6/2017* |
| 01/23/2018 | Review Hearing  (9:00 AM) (Judicial Officer Harris, Susan) |
| | *Per Email Sent from CA's Office; sent on 01/24/2018* |
| | Result: Continued |
| 03/12/2018 | Returned by USPS |
| | *USPS needs TDC#/Unable to forward.* |
| 07/30/2018 | Review Hearing  (9:00 AM) (Judicial Officer Harris, Susan) |
| 08/02/2018 | Letter |
| | *From CA Office to Defense Atty - PIA* |
| 08/13/2018 | Letter |
| | *From Defendant* |
| 09/10/2018 | Letter |
| | *From Defendant* |
| 10/09/2018 | Letter |
| | *From Defendant Dated 10/04/2018* |
| 06/28/2019 | Letter |
| | *From Defendant Received 6/28/2019 Mailed informatio requested 7/11/2019* |
| 07/18/2019 | Letter |
| | *From Defendant dated 7/14/2019* |
| 07/19/2019 | Letter |

|            |                                                                       |
|------------|-----------------------------------------------------------------------|
|            | *To County Attorney From Defendant*                                   |
| 07/25/2019 | **Letter**                                                            |
|            | *To District Clerk From Defendant dated 7/14/2019*                    |
| 08/14/2019 | **Motion**                                                            |
|            | *For Appointment Of Counsel - Defendant's*                            |
| 08/15/2019 | **Reponse**                                                           |
|            | *On Motion For Appointment Of Counsel - Unopposed*                    |
| 08/22/2019 | **Letter**                                                            |
|            | *From Defendant dated 8/16/2019*                                      |
| 08/22/2019 | **Letter**                                                            |
|            | *To County Clerk from Defendant*                                      |
| 08/23/2019 | **Letter**                                                            |
|            | *From County Clerk's Office to Defendant dated 8/23/2019*             |
| 08/23/2019 | **Letter**                                                            |
|            | *To County Clerk From Defendant dated 8/16/2019*                      |
| 08/29/2019 | **Letter**                                                            |
| 08/30/2019 | **Letter**                                                            |
|            | *To Defense Attorney From Defendant dated 8/25/2019*                  |
| 09/09/2019 | **Letter**                                                            |
|            | *From Defendant dated 8/39/2019*                                      |
| 09/23/2019 | **Letter**                                                            |
|            | *From Defendant dated 9/26/2019*                                      |
| 09/23/2019 | **Letter**                                                            |
|            | *From Defendant To Judge dated 9/17/2019*                             |
| 09/23/2019 | **Letter**                                                            |
|            | *from Defendant.*                                                     |
| 09/30/2019 | **Letter**                                                            |
|            | *From Defendant dated 9/27/2019*                                      |
| 09/30/2019 | **Letter**                                                            |
|            | *From Defendant dated 9/27/2019*                                      |
| 10/03/2019 | **Motion To Withdraw As Counsel**                                     |
| 10/03/2019 | **Order**                                                             |
|            | *On Motion to Withdraw as Counsel*                                    |
| 10/10/2019 | **Motion**                                                            |
|            | *to Disqualify Counsel Sent to CA 10/24/2019*                         |
| 10/11/2019 | **Motion**                                                            |
|            | *to Disqualify as Counsel - Defendant's Response sent to CA 10/24/2019* |
| 10/15/2019 | **Motion**                                                            |
|            | *to Disqualify Counsel -Defendant's Response sent to CA 10/24/2019*   |
| 10/15/2019 | **Letter**                                                            |
|            | *on Motion to Disqualify Counsel*                                     |
| 10/22/2019 | **Response**                                                          |
|            | *Unopposed - Defendant's Motion to Withdraw as Counsel*               |
| 10/24/2019 | **Order**                                                             |
|            | *on Motion to Withdraw as Counsel - Unopposed*                        |
| 10/25/2019 | **Letter**                                                            |
|            | *from Judge on Motion to Disqualify Counsel*                          |
| 10/31/2019 | **Letter**                                                            |
|            | *from Def. asking for another request. Emailed to County Attorney Office.* |
| 11/18/2019 | **Letter**                                                            |
|            | *to Ashley Warnix*                                                    |

---

**FINANCIAL INFORMATION**

---

|            | **Defendant Adams, Russell Scott**       |          |
|------------|------------------------------------------|----------|
|            | **Total Financial Assessment**           | 787.00   |
|            | **Total Payments and Credits**           | 0.00     |
|            | **Balance Due as of 11/23/2019**         | 787.00   |
| 07/25/2016 | Transaction Assessment                   | 10.00    |
| 07/29/2016 | Transaction Assessment                   | 10.00    |
| 07/29/2016 | Transaction Assessment                   | 10.00    |
| 07/29/2016 | Transaction Assessment                   | 5.00     |
| 12/15/2016 | Transaction Assessment                   | 252.00   |
| 12/19/2016 | Transaction Assessment                   | 500.00   |

Fines

Cause No. CR160667

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY COURT AT LAW |
| | § | |
| V. | § | OF |
| | § | |
| RUSSELL SCOTT ADAMS | § | KERR COUNTY, TEXAS |

## MOTION TO DISMISS

Offense <u>RESIST ARREST SEARCH OR TRANSPORT</u>    Date of Offense <u>06/11/2016</u>

      NOW COMES the state of Texas, by and through her **Assistant** Kerr County Attorney, and respectfully requests the court to dismiss:

☒ the above-entitled and -numbered cause.
☐ Count(s) _____ of the above-entitled and -numbered cause
☐ the Motion to Revoke in the above-entitled and -numbered cause
☐ the Motion to Adjudicate in the above-entitled and -numbered cause

for the following reason:
☐ Justice cannot be served through further proceedings in this matter.
☐ Due to the age of this case, the State believes that it is in the interest of justice to dismiss.
☐ Defendant has been convicted on another case, Cause No.(s) _____
☐ Defendant pled guilty to Count(s) _____ of the above-entitled and -numbered cause.
☐ Defendant has paid full restitution in this matter.
☐ Defendant has completed the Focus Course.
☐ Defendant is presently incarcerated in TDCJ.
☐ Defendant is deceased.
☐ Defendant has provided a true copy of a valid prescription.
☐ Defendant has been found incompetent.
☐ Defendant has never been arrested on the warrant.
☐ This case has been re-filed _____
☐ Complaining witness no longer wishes to prosecute.
☐ Complaining witness is no longer available for trial or is missing or is deceased.
☐ The case has not been processed.
☐ This offense was taken into account in determining sentence in Cause No. _____ in the _____ Court of Kerr County, Texas, pursuant to Section 12.45, Texas Penal Code.
☐ Although there is sufficient evidence to support probable cause, there is not, after further investigation, sufficient evidence to support a conviction, or a conviction under these facts would be highly unlikely.
☒ Other: <u>Defendant in TDCJ on Stacked Sentences</u> _____

      WHEREFORE, it is prayed that the above-entitled and -numbered cause be dismissed.

Date ___12/13/22___

_signature_
Heather Stebbins, Kerr County Attorney SBN 24046603
Robert Hunter Moose, Assistant County Attorney, SBN 24089840
Jason Sorensen, Assistant County Attorney, SBN 24110388

### ORDER

      The foregoing motion having been presented to me on ___December 13, 2022___, and the same having been considered, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the motion is hereby granted.

_signature_
SUSAN F. HARRIS, Judge Presiding

Cc:  Agency AND Case No. Kerrville Police Department KPD 1601894 ✓
     Kerr County Attorney ✓
     Defendant ✓
     Defendant's Attorney, *(Weston Eismann)* ✓
     Surety on Defendant's Bond, if any

Filed 13 Day of Dec A.D. 2022 3:30
JACKIE DOWDY, KERR CO. CLERK TIME

By: _____ Deputy

Printed on: 12/13/2022

Cause No. CR160666

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY COURT AT LAW |
| | § | |
| V. | § | OF |
| | § | |
| RUSSELL SCOTT ADAMS | § | KERR COUNTY, TEXAS |
| | MOTION TO DISMISS | |

Offense <u>INTERFER W/PUBLIC DUTIES</u>    Date of Offense <u>06/11/2016</u>

      NOW COMES the State of Texas, by and through her **Assistant Kerr County Attorney**, and respectfully requests the court to dismiss:

☒ the above-entitled and -numbered cause.
☐ Count(s) _____ of the above-entitled and -numbered cause
☐ the Motion to Revoke in the above-entitled and -numbered cause
☐ the Motion to Adjudicate in the above-entitled and -numbered cause

for the following reason:
☐ Justice cannot be served through further proceedings in this matter.
☐ Due to the age of this case, the State believes that it is in the interest of justice to dismiss.
☐ Defendant has been convicted on another case, Cause No.(s) _____
☐ Defendant pled guilty to Count(s) _____ of the above-entitled and -numbered cause.
☐ Defendant has paid full restitution in this matter.
☐ Defendant has completed the Focus Course.
☐ Defendant is presently incarcerated in TDCJ.
☐ Defendant is deceased.
☐ Defendant has provided a true copy of a valid prescription.
☐ Defendant has been found incompetent.
☐ Defendant has never been arrested on the warrant.
☐ This case has been re-filed _____
☐ Complaining witness no longer wishes to prosecute.
☐ Complaining witness is no longer available for trial or is missing or is deceased.
☐ The case has not been processed.
☐ This offense was taken into account in determining sentence in Cause No. _____ in the _____ Court of Kerr County, Texas, pursuant to Section 12.45, Texas Penal Code.
☐ Although there is sufficient evidence to support probable cause, there is not, after further investigation, sufficient evidence to support a conviction, or a conviction under these facts would be highly unlikely.
☒ Other: <u>Defendant in TDCJ on Stacked Sentences</u>_____

      WHEREFORE, it is prayed that the above-entitled and -numbered cause be dismissed.

Date _1/13/22_

_____
Heather Stebbins, Kerr County Attorney SBN 24046603
Robert Hunter Moose, Assistant County Attorney, SBN 24089840
Jason Sorensen, Assistant County Attorney, SBN 24110388

**ORDER**

      The foregoing motion having been presented to me on _December 13th, 2022_, and the same having been considered, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the motion is hereby granted.

_____
SUSAN F. HARRIS, Judge Presiding

Cc:  Agency AND Case No. Kerrville Police Department ✓ _KPD1601894_
     Kerr County Attorney ✓
     Defendant ✓
     Defendant's Attorney, *(Weston Eismann)* ✓
     Surety on Defendant's Bond, if any

Filed _13_ Day of _DEC_ A.D. 20_22_ TIME _3:20_
JACKIE DOWDY, KERR CO. CLERK

By: _____ Deputy

Printed on: 12/13/2022

DEFENDANTS AND THEIR ADDRESSES:

Jesse Baldwin. J. Gonzales. Kris Keller. Austin Beal. Allison Baker. Kerrville Police Chief, and and Kerrville Police Department are all located at 429 Sidney Baker. Kerrville. TX 78028. This is their place of employment. (830) 257-8181

Kerr County. Kerr County Hospital district. Hospital Board Member #1 - #4. Peterson Regional Medical Center, Nurse Shane. Unknown PRMC Nurse #1. Unknown PRMC Staff #1 - #5. and PRMC Superintendent are located at 551 Hill Country Dr.. Kerrville. TX 78028. This is their place of employment. Some complete names are not known at this time due to the circumstances and if they can not be served more information will be given after discovery.

Judge Rex Emerson. Judge Susan Harris. Heather Stebbins. Jackline Dowdy. Anita Van Klaveren. Nuvia Cruces, Shelley parker. Ana Keller. Hollie Mouser. Terry Raney. Brian Duby. Diane Rodriguez. Rolando Valverde, Janice Smith. Natash Valdez. Rhiana Solis; Rebecca Bolin, and Kerr County are located at 700 Main Street. Kerrville. TX. 78028. This is their place of employment. (830) 792-2290

Brett ferguson SBN 24040889 is located at 327 Earl Garrett. Suite 104. Kerrville. TX 78028

Weston Eismann is located at 550 Earl Garrett. Kerrville. TX 78028

Scott Monroe SBN 14272700 is located at 717 Sidney Baker. P.O. Box 291285. Kerrville. TX 78029

Elizabeth Smith is located at 129 Terrace Lane. Kerrville. TX 78028.TDL 22688947 DOB 9/28/1963 (830) 258-7823

Jessica Adams is located at 161 Four Sisters LN. Medina. TX 78055, TDL 09861864 DOB 11/25/1988 (830) 460-0734

Buster Baldwin is the father of Jesse Baldwin to whom I could not get the address and if you are unable to find and serve him I will have this address through discovery.

Evin anderson is Border Patrol for the United States of America to whom I could not get the address and if you are unable to serve him I will have this address through discovery.


PREVIOUS CASES OR FILINGS:

The plaintiff has never filed a law suit in Federal court and therefore has no sanctions against him nor has he offended the 3 strike rule of the PLRA.


ADMINISTRATIVE REMEDY:

As stated in the complaint the plaintiff is not attacking the condition of his confinement or the sentenc length. He neither has exhausted any administrative remedy because he is presenting claims that happened prior to his incarceration. therefore it is not required as a matter of law.